### Bob Parish v. The State.

#### No. 3233.   Decided October 25, 1905.

**Local Option—Evidence—Other Transactions.**

Where on trial for a violation of the local option law, evidence was introduced to the effect that defendant received during the month previous to the transaction in question, nine packages of whisky by express, and such evidence did not serve to show system in making the sales, nor did it serve to illustrate the intent of defendant, and there was no question that defendant received the whisky alleged to have been sold, by express, or that defendant furnished a quart of whisky to prosecutor or that he sold said nine packages of whisky, and said evidence was no part of the res gestæ of the transaction for which he was being tried. Held reversible error.

Appeal from the County Court of Nacogdoches.   Tried below before Hon. Robert Berger.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $75 and fifty days confinement in the county jail.

The opinion states the case.

No brief of the appellant has reached the hands of the Reporter.

*Howard Martin,* Assistant Attorney-General, for the State.—Hillard v. State, 13 Texas Ct. Rep., 520; Beall v. State, 12 Texas Ct. Rep., 801; Dunn v. State, 12 Texas Ct. Rep., 803.

HENDERSON, Judge.—This conviction is for violating the local option law, the penalty assessed being a fine of $75 and fifty days confinement in the county jail.

The only question that requires consideration is the admission, by the court, over appellant's objection, of evidence to the effect that appellant received during the month previous to the transaction in question, nine packages of whisky by express. Was this testimony admissible?   It was not a part of the res gestæ of the transaction in question.   It did not serve to show system in making the sales, nor did it serve to illustrate the intent of appellant.   No question was made as to the receipt of the whisky by appellant, or that appellant received said whisky by express.   Jasper Williams testified that about the 5th of April, Mr. Stevens (a preacher) had been injured and wanted some whisky, and sent his son to him to see if he had any whisky; that at the time Williams thought he had a package of whisky in the express office; and got his foreman to excuse him at 5 o'clock, in order that

he might go to the express office and get his package out, so he might accommodate the preacher who had been injured; that he inquired at the express office and learned the package had been taken out by another party of the same name; that he inquired of others if they knew where he could get some whisky, and among others of defendant with whom he was well acquainted. Defendant replied that he did not think he had any whisky in the express office, and if he did, he could not sell it; that he and defendant then went to the express office, and upon examination learned defendant did have two quarts of whisky in a C. O. D. package at the express office, with $2.50 charges due thereon; that he then told defendant he had to have one quart of the whisky for the preacher, and explained to him that the package he had in the office had been taken out by another Williams; that defendant then told him he could not sell him any whisky, and could not take out one quart as both were in one package; and that he did not have the money to pay the charges on the package; that he then gave defendant $2.50 and told him to get the package, as he had to have one quart for parson Stevens at once. That defendant went to the express office, got the package of whisky and brought it to him; that he opened the package and sent one of the quarts to parson Stevens, and he, defendant and some other boys drank up the other quart; that he had known defendant a long time, and knew he had been taking orders in Nacogdoches for C. P. Coats, who was in the saloon business at Lufkin, Angelina County. Witness further testified that at the time he let defendant have the $2.50 he was in debt to him in that sum, he having borrowed $2.50 in cash from defendant several weeks before, and that at the time they got the whisky, defendant told him the $2.50 he had given him and which defendant used in taking out the package, 'made them even'; and that he afterwards tried to pay defendant $2.50, and defendant refused to accept it, stating he had already paid him; he did not remember whether anything was said about paying defendant the $2.50 which he owed him before the whisky was taken out by defendant, but he did know that while he and defendant were together defendant told him 'that made them even.' Appellant himself testified as to the sale, pretty much to the same effect as the above witness; he stated that he took the $2.50 from Williams in payment of the debt which Williams was due him, and that he understood and intended that the $2.50 which Williams gave him was for the payment of the $2.50 which he was due him; and that he applied said $2.50 to that debt. That defendant twice since offered him $2.50, and witness refused it, stating that the debt had been paid. It will be seen from this testimony that the only issue presented was as to whether or not, the $2.50 was a payment by prosecutor to appellant for the two quarts of whisky, or whether the $2.50 was paid by Williams to appellant, in payment of a debt which he owed him. The testimony of both witnesses would seem to indicate that they regarded it as a payment of the debt. Let it be conceded, however, that there was testimony suggesting it was

a payment for the whisky and not a payment of the debt, still, as stated before, it was not an issue as to whether or not appellant received the whisky through the express company; and it was not an issue as to whether or not he furnished a quart of this whisky to prosecutor. The question then recurs, what legitimate purpose would the fact introduced in evidence that appellant, during the month before (April) received through the express company nine packages of whisky. No sale of this whisky by appellant was shown, but merely its receipt. It was no part of the res gestæ of this transaction. It did not illustrate any system, as stated before; nor do we see how it could serve any purpose to show the intent of appellant with reference to the particular transaction for which he was being tried. However, it evidently did serve one purpose, and that was to enhance the punishment imposed by the jury on appellant. Instead of giving him the lowest punishment, they gave him a term of fifty days in the county jail, and fined him $75. We say it evidently served that purpose, because there are no peculiar circumstances in this case, if the jury believed appellant guilty, to enhance his punishment. So it must have been used by the jury not only to aid in his conviction in some way, but to enhance his punishment. We do not believe the testimony should have been admitted. Because of its admission, the judgment is reversed and the cause remanded.

*Reversed and remanded.*