JOHN SOUTHWORTH v. THE STATE.

No. 4006.   Decided February 12, 1908.

**1.—Local Option—Evidence—Elections.**

Where upon trial for a violation of the local option law the orders and records read in evidence were sufficient to show and did show the due and regular adoption of local option, there was no error in overruling objections thereto.

**2.—Same—Evidence—Unwilling Witness—Discretion of Court.**

Where upon trial for a violation of the local option law, the State's witness was unwilling and reluctant in answering State's counsel's questions, and the latter claimed surprise at the witness' testimony, there was no error in the State's counsel's question: if the witness did not tell him that the stuff he bought from defendant looked like beer and was intoxicating, to which witness answered in the negative. This was largely in the discretion of the court. Davidson, Presiding Judge, dissenting.

**3.—Same—Evidence—Search and Siezure of Intoxicating Liquors—Impeaching Testimony.**

Upon trial for a violation of the local option law, where the defendant contended that he had never kept intoxicating liquors, there was no error in permitting the State to introduce testimony that some six weeks after the alleged sale, the officers under a search warrant seized a quantity of intoxicating liquor in the possession of the defendant; and that the defendant allowed the officers to condemn and break up the vessels holding the liquor, and that he paid the cost in the confiscation case. This testimony was admissible for the purposes of impeachment. Davidson, Presiding Judge, dissenting.

**4.—Same—Charge of Court—Non-Intoxicant.**

Where upon trial for a violation of the local option law, the defendant contended that the beverage that he permitted to be sold was a non-intoxicant, the court correctly charged that if defendant in good faith believed that the liquor that he caused to be sold was non-intoxicating to acquit, and the charge was favorable to defendant.

**5.—Same—Sufficiency of Evidence—Fair Trial.**

Where upon trial for a violation of the local option law, the facts of the case upon the whole were fairly presented to the jury, and the issue as to whether the liquor was intoxicating was favorably submitted, the verdict of guilty will not be disturbed.

Appeal from the County Court of Fannin. Tried below before the Hon. H. A. Cunningham.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $50 and thirty days confinement in the county jail.

The opinion states the case.

*McGrady & McMahon,* for appellant.—On question of impeaching own witness: Greenbough v. Eccles, 5 C. B. (N. S.), 786; Largin v. State, 37 Texas Crim. Rep., 574; Bennett v. State, 24 Texas Crim. App., 73; Gill v. State, 36 Texas Crim. Rep., 589; Baileu v. State, 37 Texas Crim. Rep., 579; Erwin v. State, 32 Texas Crim. Rep., 519; Dunegain v. State, 38 Texas Crim. Rep., 614; Gibson v. State, 29 S. W. Rep., 471; and other cases cited in the dissenting opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted in the county court of Fannin County on complaint and information, charging him with selling intoxicating liquors in said county in violation of the local option law.

There are many questions raised in the record, most of which, however, relate to the same matter. The orders and records read in evidence were sufficient to show and did show the due and regular adoption of local option in Fannin County, and all assignments and questions of sufficiency thereof are overruled.

The witness Cobble testified, in effect, that he knew defendant, John Southworth, and that he bought what they called "wakasha" from both Frank Smith and from J. W. Bland, and that Smith and appellant were partners in a drink stand and confectionery business at Trenton in that county. That he did not remember of seeing the defendant at the time of the sale, but the defendant was behind the bar part of the day waiting on customers. The testimony of this witness is somewhat indistinct and uncertain as to whether the liquor bought by him at Smith's place was intoxicating, though there would seem to be no doubt of this fact in the light of the testimony of the witness Thompson, who bought and drank the same character of liquor as that which the witness Cobble admitted buying. While the witness Cobble was on the stand, the county attorney propounded to him the following question: "Did you not tell me in my office that you bought some stuff that looked like beer and

that it intoxicated you, from the defendant himself?" This question was objected to, because it was an attempt to impeach the witness without proper predicate being laid, and because it was an attempt to impeach the State's own witness when he. had given no damaging testimony, but his testimony was negative merely, and because it was hearsay statements written down by the county attorney purporting to be the statements of the witness in the absence of the defendant, and such statements were hearsay. To this the witness was compelled to answer, and did answer as follows: "I don't remember of telling you that, for I don't remember of seeing him. I did tell you that I bought in his place of business, and that I bought from Bland at his place of business." A sufficient answer to this objection would be that the answer of the witness was not particularly hurtful, but if this was not true, in view of the explanation of the trial judge that this witness was both unwilling and reluctant and county attorney claimed surprise at his testimony, we think there was error. In matters of this sort much discretion must be left to the trial court. We not only can see no abuse of the discretion, but so far as we may observe from the. record, the trial judge exercised his discretion properly.

A more serious question arises on the cross-examination of appellant. While he was on the witness stand the following question was propounded to him by the county attorney: "Didn't the sheriff of this county seize some intoxicating liquors at your place of business under a search warrant issued by the county judge, and was the liquor so seized condemned by the court as a nuisance and ordered broken?" Objection was made to this question, and the answer sought to be elicited thereby on the grounds that it was not shown when such transaction happened, because the records were the best evidence, and because it involved another transaction, and was no proof of sale in this instance, and the liquors were not shown to have been the same. In response to the question so propounded and answer to which was enforced, appellant said, "Some six weeks after this alleged sale the officers got about twenty bottles of that frosty and broke it. I had some of the frosty in cold water and the labels washed off and they took all that the labels had washed off of; they left about a barrel with the labels on it. I let them break it without contesting it. I then paid the costs in the confiscation case." After the answer was so made the defendant further objected to same, and moved the court to exclude said evidence and instruct the jury not to consider same, because the evidence showed that it was about another transaction six weeks after the alleged sale; that same showed no system, that it could not prove or disprove his guilt in this cause, and was getting the fact before the jury that the justice court had declared his frosty intoxicating liquors; and, therefore, the jury would be justified in considering it as evidence that it was intoxicating liquors. This testimony was admitted with the explanation that the defendant had sworn that he and his partner Smith had never at any time kept any intoxicating drinks, and that this evidence was admitted as im-

peaching testimony. We have had much doubt, in passing on this question; but in view of the court's explanation, and the fact that appellant had offered himself as a witness and was stoutly contending that he had never at any time kept intoxicating liquors, we believe this proceeding against him, the nature of the litigation, his course of conduct in respect thereto, would furnish a legitimate basis and ground of substantial contradiction, and would seem to be a line of conduct, if not an express declaration, inconsistent with his testimony and statement that he never at any time had kept intoxicating liquors for sale. He does not seek by his testimony to show, nor is there any pretense or claim that the liquors seized by the officers, were different or other than those, the intoxicating qualities of which are the subject matter of controversy in this case. On the contrary, there is an implied, if not indeed an express contention, that all the liquors which had been kept at any time by him, or at any time sold by him, were not only not intoxicating, but were of similar non-intoxicating quality and character. It is true that the seizure was some weeks after the alleged sale, and if it were a case in which there was a dispute or a serious doubt as to whether the liquor sold and the liquor seized were different, the objection here urged would have some force. But in a case where defendant is seeking to justify his conduct, and defeat the charge of a sale of intoxicating liquors, he contends that throughout his course of business at all times he confined his transactions to the sale of non-intoxicating liquors, is it not competent, as a test of his contention, for the State to prove any line of conduct, the necessary effect and consequence of which is to impute conduct to appellant inconsistent with such claim? In this case it is sought to be shown and was shown that the peace officers of Fannin County had under the warrant of law seized and confiscated his property on the ground that it was intoxicating; he is shown by the evidence to have stood by and consented; at least he did not dissent, did not undertake to reclaim his property on the ground that it was not intoxicating, and accepted, in a sense, the action of the officers, which was in harmony with the view of the State that the liquors were intoxicating, and in addition paid the cost of such proceeding. For the purposes of contradiction and impeachment, a liberal rule is allowed, and it is also competent, as we understand, to show any conduct or action on the part of the accused, the necessary or probable effect of which is to impute to him conduct or knowledge different from that which he has asserted. As to the matter of time of seizure with respect to a sale, it is, as we say, immaterial, in view of the claim and testimony of appellant, that the liquor sold by him at all times was practically the same, and at all times non-intoxicating. Remoteness, in point of time, however it might affect the value of the testimony, was not, we believe, ground for its exclusion.

Various exceptions were made to the charge of the court. The general charge of the court, supplemented by instruction No. 2, given at the request of defendant's counsel, seems to be unexceptional, and con-

tains as favorable a submission of the issue as the defendant had a right to demand. This charge is as follows: "I charge you, gentlemen of the jury, that if the defendant in good faith, believed the liquor sold by Frank Smith to the witness Cobble was non-intoxicating, if you find such sale was made, you cannot convict the defendant, even though you should find that defendant authorized said Smith to sell same." This not only authorized the jury to find the defendant not guilty if the liquor was not intoxicating, but went even farther and instructed them to so find if they reached the conclusion that appellant believed it was not intoxicating. The whole charge, taken together, contains a most favorable submission of the issue, as far as defendant is concerned, of the controverted facts of the case.

There are other questions raised appropriately by bills of exceptions, which we have carefully considered, but in view of the length of this opinion already, we deem it unnecessary to pass on them. On the whole, the facts of the case were fairly presented to the jury; not only the issue as to whether the liquor was intoxicating was submitted, but the issue was further submitted as to whether defendant believed it to be intoxicating. The jury on a fair submission have found adversely to appellant, and there is no reason why we should interfere.

The judgment of the court below is in all things affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge.—I enter my dissent and will file reasons.

DAVIDSON, Presiding Judge (dissenting).—I adopt the following brief and argument of appellant, as my dissenting opinion: "There are a number of matters complained of in the record which I think are sufficiently meritorious to require a reversal of the judgment. The court erred in holding that the manner of the State's attorney examining its witness W. G. Cobble, was without error, for the reason: . I. The State can not impeach its own witness when the witness merely fails to make a case or gives negative testimony injurious to the State's case. II. It is improper to hold up a paper and pretend to read from it as the testimony of the witness on a former occasion and lay the predicate to impeach him without first submitting such paper or document to the witness. And III. It is not a proper practice to make insinuations before the jury by the pretense of a predicate to impeach and thereby leave the impression on the jury that the witness' original testimony made out a straight case, and that for some reason unknown to the prosecution he has changed his testimony. This is not proper and should constitute reversible error. The statute authorizes this to be done when the witness states facts injurious to his cause, and does not give this right on a mere pretext, and I think the bill shows it was a mere pretext. Take it that such procedure was in good faith, then it was not just to the defendant; and quoting the words of the

court in Greenbough v. Eccles, 5 C. B. (N. S.), 786: 'The legislature could never have intended to introduce the unsworn statements of a witness as evidence in favor of a party who calls him, which with the jury they inevitably would be—merely on the ground that the witness, without any sinister motive or ill-feeling, honestly gives a different account of the matter in the witness box from what he had given on a former occasion, without fraud on the party who calls him. It would be unjust to the party and unfair to the witness to allow it.' In a local option case this court without any dissent held that such a procedure was illegal. Largin v. State, 37 Texas Crim. Rep., 574. There it was said it was hearsay; that the witness simply gave negative testimony when he denied paying 25 cents for beer he got from the defendant, and that it could not help the State's case to impeach its own witness. But the court may say, as it did in the opinion affirming this case, that the answer 'was not particularly harmful' because the witness answered in the negative; but this court ought not to say that such conduct by the State's officers was not harmful. He lead the jury to believe that he had the statement of the witness before him and was reading from it and that this witness had at one time made out a case. I say, in the language of the court in Greenbough v. Eccles, supra, that it meant 'to introduce the unsworn statements of a witness as evidence in *favor of the party who calls him*—which with the jury they inevitably would be.' It was getting this matter before the jury with no intention to prove it by legal evidence. I call attention to bill of exceptions No. 7 which complains of this matter. The court there certified that the witness said: 'I don't remember of telling you that, for I don't remember of seeing him,' instead of saying that he saw him in there waiting on customers. As a common-sense proposition it seems that the jury would inevitably suppose from the action of the county attorney that the facts he stated in his question were the real facts and that the witness had been induced to change his testimony. Bennett v. State, 24 Texas Crim. App., 73; Gill v. State, 36 Texas Crim. Rep., 589; Bailey v. State, 37 Texas Crim. Rep., 579; Largin v. State, 37 Texas Crim. Rep., 574; Erwin v. State, 32 Texas Crim. Rep., 519; Dunagain v. State, 38 Texas Crim. Rep., 614; Gibson v. State, 29 S. W. Rep., 471.

"On the second proposition, it is illegal and unfair to the witness (the defendant) and the jury to pretend to be reading from a document and not let the witness see it or the jury or the defendant know its contents. In Grosse v. State, 11 Texas Crim. App., 375, Judge Hurt said that it was necessary to show the witness his signature and that part of the deposition with which it was sought to impeach him. That principle was also strongly laid down in State v. Steeves, 43 Pac. (Or.), 947. I also refer to Greenl. Ev., sec. 46, and to 7 Enc. of Ev., pages 117–19.

"On the third proposition I am clearly of opinion that it should be demanded of the State that the prosecution be fair and open and such practice as this be condemned. I think the record bears out the

statement that the witness never made the statements and the county attorney was misleading the jury. An examination of bill of exceptions No. 7 will show that counsel made this statement as a part of their objection: 'That it was the intention of the county attorney when asking the question to make a mere insinuation to argue as evidence before the jury, with no intention to get on the stand or put any witness on the stand to impeach him, and such actions were unfair and dishonest both as to the witness and the defendant.' If the attorney could have shown that the witness did make such statement to him, does it not seem reasonable that he would have taken the stand or put some witness on the stand to prove these statements after he had been accused in open court of being unfair and dishonest in asking such question, and after being told that he could not make the proof and did not intend to do so when he asked the question? The record does not show that he sought to prove it. It would have been more just to make such proof in a case where it could be made than to so introduce unsworn hearsay statements by questions, as it might leave the impression on the jury that the witness perjured himself in an attempt to clear the defendant and that the defendant caused him to do it. With this impression left on the jury a very convincing argument can be made that the State has a hard time punishing such experienced violators of the law, and this too after having had access to the witnesses from the filing of the information to the final trial, and when the witnesses who patronize them are naturally in sympathy with them.

"II. In regard to the cross-examination of the defendant as a witness. The opinion says: 'A more serious question arises on the cross-examination of appellant.' It also says: 'We have had much doubt, in passing on this question.' Shall the reasonable doubt extend only to the jury in weighing the facts, or shall it extend through the entire case? The defendant should have the benefit of the doubt as to whether he was given a fair trial. I think my brethren erred in holding that the defendant could be forced to tell on cross-examination about the seizure of goods in his possession six weeks after this alleged sale, for the following, as a few of the reasons:

"1. A witness can not be impeached with illegal evidence.

"2. Other offense not involving moral turpitude can not be introduced to impeach.

"3. A judgment in a civil case is not binding and can not be introduced in a criminal case to prove the guilt of the deceased.

"4. Even if such a judgment was admissible it could not be proven by parol.

"5. The defendant could not be bound by such judgment because he was not a party to it, not being present and not agreeing to it and not contesting it.

"6. The judgment was absolutely void, being a *forfeiture case in favor of the State tried before the Hon. Geo. W. King, a justice of the peace.*

"7. It does not impeach because it does not prove or disprove anything, being a judgment by default and no test made or proof that the liquor was in fact intoxicating.

"8. It was hearsay and the ex parte proceeding of a justice of the peace.

"9. Even if it should have proved that the liquors seized were intoxicating it was too remote in time to be introduced against the defendant, being six weeks after the alleged offense.

"In order to discuss the propositions above named, I will quote the testimony of the defendant with reference to keeping intoxicating liquors; and, in this connection, will call attention to the testimony of both the State's witnesses. Cobble testified that he bought 'wakasha' from Smith, and Thompson says he bought 'frosty' and that it was labeled 'frosty' on the bottle. The defendant says he purchased these goods from the Dallas Brewery and that they guaranteed it to be nonintoxicating, and that he had drank it and did not think it was intoxicating, and that if it was intoxicating he did not know it. He says he never had beer or anything intoxicating in the house. Now, on this testimony, the majority holds that it would be admissible to impeach the defendant as a witness. In the first place, this is illegitimate testimony and can not be introduced to impeach a defendant or any other witness, and at the same time, the principle that a wide latitude is sometimes permissible in impeaching a witness even though it be a defendant. In Morales v. State, 36 Texas Crim. Rep., 234; 36 S. W, Rep., 435, and Parker v. State, 57 S. W. Rep., 668, the court held that the defendant could not be impeached by statements he had made while under arrest without proper warning, and gave as the reason therefor that it was illegal testimony, in that it was indirectly getting before a jury a confession that failed to meet the requirements of the statute. In Merritt v. State, 39 Texas Crim. Rep., 70, the court held the wife could not be impeached by matters not brought out on direct examination because it was illegal testimony. The best test is, it seems to me, as to whether or not the testimony could be offered originally. The same proposition was held in a murder case, Price v. State, 43 S. W. Rep., 96; Drake v. State, 29 Texas Crim. App., 265.

"It was in effect introducing evidence of other offenses and this court has held that a local option violation does not involve moral turpitude. Stewart v. State, 38 S. W. Rep., 1144, and cases there cited. By the same process of reasoning that he could be impeached because he may have said he never kept intoxicating liquors. Taking it on the basis that this proof really showed that he did have intoxicating liquors, let's see where it would lead us. Say that the witness Cobble had testified that defendant sold him whisky and defendant denied; also suppose, in that connection, that defendant had theretofore been convicted of selling this same witness whisky; then, because the defendant denied the sale, could he be made to admit that he had theretofore been convicted of

selling to the witness for the purpose of impeaching and showing that he probably did? If the State has a case why not try such case on the evidence instead of prejudicing the jury by outside matters on the mere pretext that it impeaches? If they can not convict on the testimony and facts which really occurred, ought not the defendant to go free rather than be convicted on a matter that he had no control over and which had nothing to do with the case on trial?

"Now, to hold that this evidence was admissible, the court must hold that a civil judgment can be introduced in a criminal case; that such judgment can be proved by parol testimony; that it is admissible when the party against whom it was introduced had nothing to do with it and did not contest it; and also that a void judgment is admissible. There is no question but that it is a civil suit, made so by statute. The defendant had no part in the rendering of it because it was taken by default. Busby v. State, 51 Texas Crim. Rep., 289; 103 S. W. Rep., 638. He gives a reasonable explanation for not contesting the case; and besides, a man does not have to fight a suit that is filed against him. He says that he advised with his attorney and the attorney told him not to fight it because it would cost more than the seized goods were worth; that he would have to take a jury and that would cost him $3, for the *J. P. would condemn soda pop.* The seized goods were not valuable, costing less than 10 cents per bottle, and there were only twenty-four bottles of it, for they left all bottles from which the labels had not washed off. These facts are not disputed. It cannot be said that he admits the intoxicating quality when he paid the costs, but it must be remembered that a judgment had been rendered against him, justly or unjustly it matters not, and he was bound to pay the costs if he had anything subject to execution. This reasoning is on the basis that it was a real judgment, which I deny. Any ex parte statement is as legal and binding as the act of the justice of the peace, Geo. W. King, who, in this instance, has assumed the function of the district judge. His act rendering the judgment was absolutely void and not binding or admissible for any purpose because such was a forfeiture case and the district court alone has jurisdiction of such matters. Myers v. State, 52 Texas Crim. Rep., 19 Texas Ct. Rep., 800; art. 8, sec. 5 of the Constitution; and every case in which any appellate court has had the matter before it.

"This court in Myers v. State, in a measure overruled Parish v. State, 48 Texas Crim. Rep., 578, 89 S. W. Rep., 830; Harris v. State, 50 Texas Crim. Rep., 411, 97 S. W. Rep., 704, and numerous others providing that other offenses can be introduced or the fact of liquor in defendant's possession at or near the time. But at the same time the court says it must not be too remote. In the Myers case, just decided, the seizure complained of, as in this case, took place six weeks after the alleged sale, and the court said it was not admissible. In this case the seizure was also six weeks after the alleged sale, and so there can be no controversy about it being admissible in point of time."

There are other matters which I intend discussing but the foregoing,

reasons are sufficient. I therefore file my dissent to the opinion of the majority of the court.