Filed 12/20/23  Seeley v. Rook CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KENNETH R. SEELEY, Individually and as Trustee, etc. et al., | D082261 |
| Plaintiffs and Appellants, | |
| v. | (Riverside Super. Ct. No. PSC1802622) |
| JAIME M. ROOK, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Riverside County, Richard Oberholzer, Ronald Johnson and Randall White, Judges.  Request for judicial notice denied; motion to take new evidence denied. Judgment reversed.

Apex Law and Thomas Neal FitzGibbon for Plaintiffs and Appellants.

Reisz Siderman Eisenberg, Frederick S. Reisz and Patrick Allen Maher for Defendants and Respondents.

Plaintiffs Kenneth R. Seeley and Eric McLaughlin agreed to sell their Intervention911 drug rehabilitation business, taking back notes and deeds of trust on three associated real properties in Palm Springs. They understood their deeds of trust would be recorded in first position, giving them adequate protection in the event of default. But after the initial purchasers, defendants Daryle Rutherford and Urwell Diversified Holdings, Inc. (collectively Urwell) assigned their rights to purchase the business and properties to Zenith Homes, LLC (Zenith), Zenith obtained a second loan from a different lender, Cardenas Three (Cardenas), secured by the same properties. As part of an alleged fraud involving Urwell, Zenith, Cardenas, and the escrow company (Integrity Escrow), the three Cardenas deeds of trust were recorded in first position, a fact plaintiffs did not discover until three months after escrow closed. At or about the same time, Zenith began to default on its payment obligations. Cardenas eventually foreclosed on the three properties, leaving plaintiffs without any effective way to recover the amount of their loan.

Plaintiffs filed this action, suing the various defendants for fraud, breach of contract, and related causes of action. They also brought claims for professional negligence and breach of fiduciary duty against Jaime M. Rook and PSP Ventures, Inc. (collectively, PSP), which acted as a dual broker for all parties in the real estate transaction. In effect, plaintiffs allege that PSP should have discovered indicators of the looming fraud in time to protect their interests. After plaintiffs failed to file timely opposition papers, the court granted PSP's motion for summary judgment, entering judgment in its favor.

Plaintiffs advance both procedural and substantive grounds for reversal. Procedurally, we conclude the trial court did not abuse its

2

discretion in refusing to continue the summary judgment hearing or in declining to consider plaintiffs' late-filed evidence. Substantively, however, our independent review of the record on summary judgment leads us to conclude the trial court erred in granting summary judgment in favor of PSP despite the lack of opposition from plaintiffs. We therefore reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A. *The Real Estate Purchase Transaction*

According to the fourth amended complaint (the Operative Complaint), plaintiffs' sale of three Palm Springs properties in September 2017 was to be "part of an overall transaction negotiated in the summer and fall of 2017 in which it was intended that Urwell would acquire the business of Intervention911." The first part of Urwell's acquisition of Intervention911's business was to involve its purchase of the three properties used in the business, while the second part was to involve its purchase of the business itself. PSP acted as a dual agent for the parties, and assisted them in "negotiat[ing] and enter[ing] into the [various] written agreements" to effectuate the real estate portion of the business acquisition.

In late August 2017, plaintiffs entered into three separate purchase agreements with Urwell for the sale of the properties. These agreements provided that plaintiffs would supply seller financing for more than half of the total purchase price. Urwell was to place the balance into an escrow account prior to the close of escrow. The loans were to be paid back with interest set at a fixed rate of eight percent, and were due to be paid in full by

---

[1] The background facts are taken from the allegations of the Operative Complaint and relevant "undisputed facts" as set out by PSP in its motion for summary judgment.

April 2018.  The purchase agreements specified that plaintiffs' security interest would "be in the first position."

Integrity Escrow prepared estimated closing statements that were sent to, among others, PSP, Urwell, and plaintiffs.  The estimated closing statements indicated that the only financing in the transaction would be the seller financing, that plaintiffs would have title insurance for their deeds of trust securing the financing, and that the purchasers would be using cash for the remainder of the purchase price.

Just prior to closing the transaction, the escrow instructions were amended to reflect Zenith as the purchaser.  According to plaintiffs, they were unaware that Urwell and Zenith had begun working with Cardenas to obtain additional financing to complete the purchase.  Plaintiffs allege that Zenith submitted inaccurate and false documents to Cardenas, including "Sham Purchase Agreements" that purported to be between Urwell and Zenith, in order to obtain the Cardenas loans.  Plaintiffs believe that Urwell and Zenith conspired with Integrity Escrow to keep any information about the Cardenas loans a secret from them.

Escrow on the sale of the Palm Springs properties from plaintiffs to Zenith closed on September 29, 2017.  According to plaintiffs, the "Seller Closing Statements" provided to plaintiffs by Integrity Escrow did not reflect the existence of the Cardenas loans, nor did they reflect the "accurate substance of the sale and loan transactions."  As part of the closing and unbeknownst to plaintiffs, the three Cardenas deeds of trust were recorded in first position, while plaintiffs' deeds of trust were recorded in second position.  According to plaintiffs, they first learned in December 2017 that their security interest had not been recorded in first position.

4

According to Rook, he never saw any escrow instructions indicating that plaintiffs' secured position was to be second to that of Cardenas. Once it became clear that the Cardenas deeds of trust had been recorded in first position, Rook asked for a copy of the executed escrow instructions from Integrity Escrow, but it failed to provide them. Rook believed that what occurred was an " 'inexcusable mistake by escrow.' " Rook "continued investigating [what occurred and] demand[ed] a higher up at Integrity be brought in," but he was never able to talk with someone other than the escrow agent.

Only a few months after the transaction closed, Zenith defaulted on its payments toward plaintiff's promissory notes. In addition, Zenith failed to pay the full amount of the loan when it came due in 2018. Apparently Zenith also failed to pay on the promissory notes it had executed in favor of Cardenas beginning in late 2017.

On March 23, 2018, Cardenas recorded a "Notice of Default and Election to Sell under Deed of Trust" as to each of the three properties. Plaintiffs filed this action on May 4, 2018, and twice the following July sought a temporary restraining order to stop the impending trustee's sale of the properties. The trial court denied both requests, and on July 20, 2018 Cardenas foreclosed on the properties, obtaining title to them through the trustee's sale.

B. *Procedural History*

In the Operative Complaint, plaintiffs alleged causes of action for professional negligence, breach of fiduciary duty, and the violation of Business & Professions Code section 17200 et seq. (the Unfair Competition Law (UCL)) against PSP. These causes of action are based on alleged breaches of the standard of care owed by a real estate professional—

5

specifically the "fail[ure] to discover or fail[ure] to inform" plaintiffs that: (1) Zenith was obtaining financing from Cardenas, which was not approved by plaintiffs; (2) Integrity Escrow was not following the escrow instructions, and was instead issuing inconsistent instructions that would improperly allow the unauthorized subordination of plaintiffs' deeds of trust; (3) Zenith could not satisfy its obligations to repay plaintiffs; and (4) Integrity Escrow was not following through to obtain the promised title insurance for plaintiffs' deeds of trust.

After the parties engaged in discovery, PSP filed a motion for summary judgment, or in the alternative, summary adjudication in October 2021. Plaintiffs failed to file a timely opposition to the motion, and the trial court denied their request to continue the hearing on the motion.[2] The court proceeded with the summary judgment hearing on January 6, 2022, and, with no opposition having been filed, granted the motion. Three weeks later, the court entered a formal written order granting summary judgment.[3] Judgment was entered in favor of PSP on February 4, 2022.[4]

## DISCUSSION

Plaintiffs' arguments on appeal can be characterized as those challenging the procedural decisions the trial court made prior to granting

---

[2] We provide additional background regarding the parties' litigation of PSP' summary judgment motion in our discussion section, *post*.

[3] The Honorable Richard Oberholzer conducted the summary judgment hearing and granted the motion at the conclusion of the hearing, however, the formal written order granting summary judgment was entered approximately three weeks after the hearing and was signed by the Honorable Ronald Johnson.

[4] A third judge, the Honorable Randall White, signed the judgment.

summary judgment in favor of the PSP, and those challenging the substantive conclusion that summary judgment was proper.

As to the procedural arguments, plaintiffs contend that the trial court abused its discretion in denying their ex parte request for a continuance, which was filed two days before the summary judgment hearing, and in declining to consider an expert declaration they submitted the day before the hearing.

With respect to the substance of PSP's summary judgment motion, plaintiffs argue that reversal is warranted due to PSP's failure to provide all of the evidence relevant to the issues raised in the motion, including plaintiffs' responses to form interrogatories. According to plaintiffs, PSP failed to acknowledge that these discovery responses furnish important context for the individual plaintiffs' responses to questions posed during their depositions, and in relying solely on the depositions, PSP offers an incomplete picture of the state of the evidence on summary judgment. Next, plaintiffs argue that reversal of the judgment is warranted because PSP failed to meet its burden on summary judgment. In connection with this argument, plaintiffs contend that the trial court erred in overruling their evidentiary objections to certain evidence submitted in support of PSP's summary judgment motion.

A. *The trial court did not abuse its discretion in declining to continue the summary judgment hearing and declining to consider plaintiffs' untimely submission of evidence.*

PSP filed its motion for summary judgment in early October 2021, but due to a problem with service, an amended notice of motion for summary judgment was filed and served on October 19, 2021, with a hearing date set

7

for January 6, 2022.  Plaintiffs' opposition was due on December 23, 2021. (Code of Civil Procedure,[5] § 437c, subd. (b)(2).)

December 23 passed with plaintiffs failing to file an opposition or request to continue the hearing.  Instead, on January 3, 2022, three days before the scheduled hearing, PSP filed a document titled, "Notice of Plaintiffs' Failure to File Timely Opposition to Motion for Summary Judgment" (some capitalization omitted).  In it, PSP relayed a summary of the history of the parties' discovery as well as communications between the attorneys regarding the pending summary judgment motion.

The following day, plaintiffs filed an ex parte request to continue the hearing and asked for a new hearing date of January 18, 2022 or later.  They also filed a document titled, "Declaration of Lawrence Jacobson in Opposition to Rook and PSP Ventures Motion for Summary Judgment," as well as written evidentiary objections to Rook's declaration.  The trial court heard the ex parte request January 5, 2022—the day before the scheduled summary judgment hearing—and declined to continue the hearing.

At the summary judgment hearing, the trial court made a comment indicating it would not be considering any evidence presented by plaintiffs: "You're asking that the court consider other evidence, and you never submitted any opposition to the motion itself."  In discussing the merits of the motion, the court did not refer to the expert declaration that plaintiffs had submitted the day before.  Nor did the court refer to that evidence in the written order formalizing the granting of the summary judgment motion.

---

[5]     Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

8

Plaintiffs contend that the trial court should have granted their request to continue the hearing. They argue "[t]he law provides (1) good faith requests to continue summary judgment hearings should typically be granted, and (2) granting summary judgment motions without opposition, and in the nature of a default, due to a need for more time for the opposing party to prepare the opposition materials is often an abuse of discretion." We do not disagree with these general propositions. However, a review of the record in this case supports the trial court's ruling.

"In seeking a continuance of a summary judgment motion, a plaintiff has essentially two options. The first option is to comply with section 437c, subdivision (h)." (*Hamilton v. Orange County Sheriff's Dept.* (2017) 8 Cal.App.5th 759, 764–765 (*Hamilton*).) But even where he or she cannot satisfy the statutory requirements, "a plaintiff may seek a continuance under the ordinary discretionary standard applied to requests for a continuance," generally. (*Id.* at p. 765; see *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 716.) An ordinary request for continuance of a summary judgment hearing not made in compliance with section 437c, subdivision (h) "requires a showing of good cause." (*Hamilton*, at p. 765; *Lerma*, at p. 716.)

Plaintiffs' request to continue PSP's summary judgment motion clearly did not meet the requirements of section 437c, subdivision (h)—it was not made on or prior to the date the opposition was due, and it was not supported by an affidavit attesting to the reasons why "facts essential to justify opposition may exist but [could not] . . . be presented" (*ibid.*). Therefore, plaintiffs' remaining option was to seek a continuance under the ordinary discretionary standard for requests for a continuance. (See *Hamilton*, *supra*, 8 Cal.App.5th at p. 765.)

In general, a court abuses its discretion " ' "if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice." ' " (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378.)  However, where the decision to deny a continuance effectively results in a party's default with respect to a summary judgment motion because the denial has the consequence of precluding the filing of an opposition, the strong public policy favoring disposition on the merits will, in most circumstances, outweigh the competing policy favoring judicial efficiency.  (See *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398–399.)  This rule may give way, however, where the party's procedural failing was deliberate or where the party has a history of gamesmanship in pretrial practice:  "Terminating sanctions such as an order granting summary judgment based upon procedural error ' "have been held to be an abuse of discretion *unless the party's violation of the procedural rule was willful* [citations] *or*, if not willful, *at least preceded by a history of abuse of pretrial procedures*, or a showing [that] less severe sanctions would not produce compliance with the procedural rule." ' "  (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1364, fn. 16, italics added (*Elkins*).)

The "good cause" offered by plaintiffs was their attorney's health issues, which assertedly made it difficult for him to complete the opposition when it was due.  Typically, an attorney's health issues would provide sufficient good cause for a continuance, particularly where the denial of the requested continuance effectively operates as a terminating sanction.  Thus, under most circumstances, the denial of a continuance of a summary judgment motion to allow the filing of an opposition would be an abuse of discretion.  Here,

however, the record reflects a history of plaintiffs' counsel abusing pretrial procedures.

Plaintiffs' counsel first began to ignore the due dates for the submission of opposition papers when Cardenas filed a motion to expunge the lis pendens in October 2018. When plaintiffs' opposition came due, nothing was filed. It was three days later when plaintiffs' counsel sought a stipulation from Cardenas's counsel to continue the hearing. Opposing counsel stipulated to the requested continuance, yet the new opposition deadline also passed without any communication from plaintiffs' attorney. Plaintiffs' counsel eventually filed a nonconforming opposition two weeks after it was due. He then applied ex parte for a continuance of the lis pendens expungement hearing a week prior to it, and the court granted a continuance.

Similar conduct occurred in connection with several of Cardenas's motions to compel. This time, despite defense counsel's stipulation to continue the hearing date, the new opposition due date passed without plaintiffs filing anything. It was not until Cardenas's counsel filed a document notifying the court that no opposition had been filed that counsel for plaintiffs moved ex parte for yet another continuance.

A similar failure to file a timely opposition occurred in connection with Cardenas's motion for summary judgment. Once again, the due date for plaintiffs' opposition passed without the filing of an opposition or a request for a continuance. Although the trial court granted a continuance of this summary judgment hearing at plaintiffs' request, the court required them to file their opposition the day after the ex parte hearing. Despite this order, the new opposition due date passed without any opposition being filed. Plaintiffs finally filed their opposition papers nearly three weeks after the *new* deadline.

11

Based on the record of pretrial proceedings in this case, the trial court could have reasonably concluded that the totality of this conduct constituted " 'a history of abuse of pretrial procedures' " (*Elkins*, *supra*, 41 Cal.4th at p. 1364, fn. 16). This record demonstrates a pattern of extreme delay, with not even minimal explanation as to why requests for continuances could not have been made earlier. Given these circumstances, the court properly decided it would no longer excuse such conduct, and its denial of the request to continue the summary judgment motion was not an abuse of discretion.

For the same reasons, we also reject plaintiffs' contention that the trial court erred in not considering their untimely expert declaration. A trial court generally has discretion to refuse to consider late-filed papers (see Cal. Rules of Court, rule 3.1300(d)) and, as a result, its refusal to consider an untimely opposition or declaration is reviewed for an abuse of that discretion. (See *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765.) But as with a denial of a continuance that effectively operates as a terminating sanction, the rejection of untimely papers that effectively operates as a terminating sanction normally constitutes an abuse of the court's discretion unless the party's procedural failing was deliberate or there is a history of abuse of the pretrial processes. (See *Elkins*, *supra*, 41 Cal.4th at p. 1364, fn. 16.) Again, given plaintiffs' counsel's prior abuse of pretrial procedures, the trial court could have reasonably concluded that the filing of an expert declaration on the eve of the summary motion hearing date should not be permitted; the court's decision in this regard did not constitute an abuse of discretion.[6]

---

[6] We likewise deny PSP's December 20, 2022 motions asking this court to make factual determinations on appeal by taking new evidence and taking judicial notice of documents from other cases in which plaintiffs' attorney was counsel of record. The new evidence and documents PSP proffers purport to demonstrate that plaintiffs' attorney was working on the case at the time

B.     *The trial court erred in granting summary judgment despite plaintiffs' procedural failures in opposing the motion.*

The function of summary judgment "is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) "A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 (*Kahn*).) But the burden of persuasion always remains with the defendant. "When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.'" (*Id.* at p. 1003.) In other words, a defendant "moving for summary judgment bears an initial burden of

---

when the summary judgment opposition was due, despite his claims that his health made it difficult for him to work, and that he has behaved similarly in other cases. According to PSP, these items undermine the good cause proffered for plaintiffs' failure to file a timely opposition. "'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule [8.252(b)] of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances, no such findings should be made.'*" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) No exceptional circumstances exist here because the additional evidence is unnecessary to our determination of this appellate issue. We therefore deny the motion to take new evidence and the request for judicial notice.

13

production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, at p. 850.)

If the moving party fails to make this initial showing, it is unnecessary to examine the opposing party's evidence and the motion must be denied. It is only where the moving papers make a prima facie showing *sufficient to justify a judgment in the moving party's favor* that the burden shifts to the other party to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Kahn, supra*, 31 Cal.4th at pp. 1002–1003; see *Aguilar, supra*, 25 Cal.4th at p. 849.) Thus, regardless whether the nonmoving party files an opposition, the trial court always independently determines whether the moving party has met its initial burden of proof before granting summary judgment or adjudication. (§ 437c, subd. (p)(2); *Thatcher v. Lucky Stores, Inc.* (2000) 79 CA4th 1081, 1085–1086; *Mosley v. Pacific Specialty Insurance Company* (2020) 49 Cal.App.5th 417, 434.)

On appeal, "[w]e review the record and the determination of the trial court de novo." (*Kahn, supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], . . . strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

> 1. *Plaintiffs' claims against PSP arise from one set of allegations regarding PSP's failures and omissions, and PSP's summary judgment motion addresses the overlapping elements of breach and causation.*

Plaintiffs have alleged three causes of action against PSP—professional negligence, breach of fiduciary duty, and violation of the UCL. Although breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence, these claims often share elements and defenses. (See

14

*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 (*Stanley*).)
" 'Professional negligence' is one type of negligence, to which general
negligence principles apply. 'With respect to professionals, their specialized
education and training do not serve to impose an increased duty of care but
rather are considered additional "circumstances" relevant to an overall
assessment of what constitutes "ordinary prudence" in a particular situation.
Thus, the standard for professionals is articulated in terms of exercising "the
knowledge, skill and care ordinarily possessed and employed by members of
the profession in good standing." ' " (*Delaney v. Baker* (1999) 20 Cal.4th 23,
31; see *Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690,
694.)

To prevail on a cause of action for professional negligence, a plaintiff
must prove "(1) the duty of the professional to use such skill, prudence, and
diligence as other members of his profession commonly possess and exercise;
(2) a breach of that duty; (3) a proximate causal connection between the
negligent conduct and the resulting injury; and (4) actual loss or damage
resulting from the professional's negligence." (*Paul v. Patton* (2015) 235
Cal.App.4th 1088, 1095 (*Paul*), internal quotation marks omitted.) The
elements of the related claim for breach of fiduciary duty are "(1) existence of
a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately
caused by the breach." (*Stanley*, *supra*, 35 Cal.App.4th at p. 1086.)

According to the parties, the causes of action for professional negligence
and breach of fiduciary duty are essentially duplicative of one another, such
that proof of one will constitute proof of the other. Correspondingly, the
negating of one or more of the elements of either would entitle PSP to
summary judgment. Both parties also agree that the UCL cause of action is
merely derivative of the breach of fiduciary duty and professional negligence

15

claims, such that the UCL claim stands or falls with these claims. (See *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277.)[7]

Our review of the relevant allegations of the Operative Complaint confirms that all three causes of action are based on the same alleged failures and omissions by PSP. Specifically, plaintiffs maintain that PSP agreed to serve as their real estate broker, as well as the broker for the buyer, in connection with the sale of the three Palm Springs properties, and, in its dual broker role, PSP owed duties to both plaintiffs and the buyer. According to plaintiffs, PSP breached its duty to exercise reasonable skill and care in providing broker services and also breached fiduciary duties owed to plaintiffs by failing to properly investigate and discover any indicators of the alleged fraud in the real estate transaction.[8] Plaintiffs rely on the same allegations as to PSP's failures and omissions as the basis for their causes of action for professional negligence and breach of fiduciary duty, as well as their UCL claim. According to plaintiffs, PSP's failure to discover the alleged fraud was a proximate cause of their loss of the value of their promissory notes, their equity in the properties, and the loss of money that they would have received from the sale of the ongoing business that was never completed.

_____

[7] Given that the parties do not separately analyze the UCL claim and instead rely on their arguments regarding the professional negligence and breach of fiduciary duty claims, we decline to separately address the UCL claim, as well.

[8] For example, plaintiffs allege that, among other things, PSP failed "to discover or . . . inform" plaintiffs that Zenith was obtaining financing from Cardenas, that Integrity was not following the escrow instructions provided to them by plaintiffs, that Zenith lacked the ability to satisfy its obligations under the promissory notes, and that Integrity had not obtained the title insurance that would have protected plaintiffs' deeds of trust.

16

In response to these allegations, PSP moved for summary judgment on the ground that the undisputed evidence demonstrates plaintiffs are unable to prove either that PSP breached its duties, or that any of PSP's alleged failures were the proximate cause of plaintiffs' damages.

2. *PSP failed to meet its burden to show that plaintiffs cannot prove a breach of duty.*

In arguing to the trial court why it was entitled to judgment as a matter of law, PSP asserted that plaintiffs "cannot show breach of duty." With certain exceptions, the determination whether a breach of duty occurs under a particular set of facts is " 'mainly for the trier of facts.' " (*Mueller v. MacBan* (1976) 62 Cal.App.3d 258, 276; see *Marzec v. Public Employees' Retirement System* (2015) 236 Cal.App.4th 889, 915 [" 'Whether the defendant breached [a] duty towards the plaintiff *is a question of fact.*' "].)

In order to demonstrate plaintiffs' inability to establish a breach of duty, PSP had the burden to introduce evidence showing one of two things. It could present proof "that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact [necessary to prove the existence of a breach of the standard of care] was true." (*Kahn*, *supra*, 31 Cal.4th at p. 1003.) Alternatively, it could demonstrate that breach of the standard of care "cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Ibid.*)

As to the first method for demonstrating entitlement to summary judgment, our review of the record reveals that PSP failed to present evidence "that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact [going to the existence of a breach of the standard of care] was true" (*Kahn*, *supra*, 31 Cal.4th at p. 1003).

17

In other words, there is no evidence in the separate statement of undisputed facts that *precludes* a finding that it was more likely than not that PSP acted in a manner inconsistent with the standard of care. This is particularly true because PSP did not present expert evidence to demonstrate that it met the standard of care in every regard in connection with their professional services, which is typically *required* in professional negligence cases: "As a general rule, the testimony of an expert witness is required in every professional negligence case to establish the applicable standard of care, whether that standard was met or breached by the defendant, and whether any negligence by the defendant caused the plaintiff's damages." (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542 (*Scott*), citing *Flowers, v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 (*Flowers*); see *Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239.)

Significantly, PSP does not argue this is a case in which the only "narrow exception" to the requirement of expert testimony would apply. (*Scott, supra*, 185 Cal.App.4th at p. 1542.) The "common knowledge" exception applies where the defendant's " 'negligence is obvious to [a layperson].' " (*Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690, 695 (*Massey*).) It has been described as being " 'principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional [services] were not such as ordinarily would have followed if due care had been exercised.[ ]' " (*Flowers, supra*, 8 Cal.4th at p. 1001, fn. omitted.)

Thus, in the real estate context, no expert testimony was needed in connection with the allegation that a real estate broker acted negligently in

18

failing to disclose material information regarding the plans of a neighbor to remodel his home in a such a way as to adversely impact the property being sold by the plaintiffs. (*Ryan v. Real Estate of the Pacific, Inc.* (2019) 32 Cal.App.5th 637.) The court concluded that "anyone who hired a real estate broker to sell her home would expect that broker to share information that would adversely impact the value of the home." (*Id.* at p. 646.) In contrast here, there is no reason to conclude that a layperson would be able to appreciate whether PSP acted in conformity with the requisite standard of care without the assistance of an expert. This was a complex commercial transaction that involved multiple properties, seller financing, a number of parties (including individuals and corporate entities), as well as dual representation by PSP. The average layperson would not necessarily have a common understanding as to what conduct would reasonably be required of a real estate broker in this context. Consequently, this is not a case in which the "common knowledge" exception applies. Rather, expert testimony is required to demonstrate the existence or nonexistence of a breach of the broker's standard of care here. Since PSP did not provide any expert testimony on that issue, they have not presented "evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that" a breach of the standard of care occurred. (*Kahn, supra*, 31 Cal.4th at p. 1002.)

PSP also failed to meet its initial burden on summary judgment by way of the second available method for establishing entitlement to judgment as a matter of law—i.e., showing that plaintiffs " '[do] not possess and cannot reasonably obtain' " the evidence necessary to prove a breach of the standard of care. (*Kahn, supra*, 31 Cal.4th at p. 1003). With respect to this option, a defendant moving for summary judgment must present *evidence* to support

19

his entitlement to judgment; he may not "simply point out" through argument "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar*, *supra*, 25 Cal.4th at p. 854, fn. omitted.) In other words, "the defendant *must* 'support[ ]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' " (*Id*. at p. 855.) Thus, for example, a defendant may meet the burden of presenting "evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" by way of "*admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing*." (*Ibid*., italics added.)

PSP appears to be relying on the absence of evidence to demonstrate that plaintiffs do not possess evidence of a breach, arguing in its motion papers: "There is no breach supported by facts or evidence. There is no evidence that PSP was aware of Cardenas' loan. There is no evidence that PSP acted in concert with Zenith or Urwell to harm Plaintiffs. There is no evidence that PSP acted with Integrity to execute the wrong escrow instructions. [¶] . . . [¶] There is no evidence that can support any contention that PSP knew or should have known that Zenith had funding from Cardenas. Nor is there any evidence to show that PSP knew or should have known that Integrity would fail to follow the escrow instructions. Indeed, Plaintiffs claim to have been defrauded and cannot show how Rook could have detected this fraud."

While these arguments are premised on the purported lack of evidence to support the theory that PSP breached their duty "to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise" (*Paul*, *supra*, 235 Cal.App.4th at p. 1095), PSP points to no

20

*evidence* to demonstrate that plaintiffs have admitted they lack the necessary evidence or that they have engaged in discovery and in the process discovered no such evidence. Instead, it presents only argument without citation to the record. And our independent review of the record does not reveal such evidence. We have found 10 statements of fact that purport to contain admissions by plaintiffs. But as we explain, these "admissions" are insufficient to meet PSP's burden to demonstrate that plaintiffs do not possess and cannot reasonably obtain needed evidence.

The first set of undisputed facts that appear to rely on admissions by plaintiffs involve assertions suggesting that PSP did everything plaintiffs asked of them in connection with the transaction:

- Seeley did not ask Rook to do anything that he did not do.

- McLaughlin testified that Rook did everything asked of him when the mistake was found.

- McLaughlin also could not testify as to any disobedience by Rook as to Plaintiffs' wishes.

These factual assertions, however, do not demonstrate that plaintiffs have conceded that PSP's conduct met the standard of care. It is evident that a real estate broker could do what was asked by a client and yet nevertheless breach the standard of care, since a broker may be required to take certain actions or engage in certain lines of inquiry to satisfy his professional duty, even when the client is unaware that such conduct is required. As a result, these facts do not operate as admissions that plaintiffs are unable to present evidence to demonstrate that PSP's conduct breached the standard of care.

The next set of undisputed facts involve assertions suggesting that the individual plaintiffs remain unaware of anything in particular that PSP did "incorrectly" during the transaction:

- Seeley only would testify that Rook erred by "never [getting] the results" for the sale.

- Seeley knew of nothing that Rook did with Integrity to cause the problems.

- The same holds true for Zenith, Urwell, and other defendants.

- Likewise, McLaughlin could not testify as to any action Rook did incorrectly.

- McLaughlin could not name a single wrong action Rook took and could only speculate.

- Seeley knew of no documents to show PSP violated its duties to Plaintiffs.

- When repeatedly asked by PSP's counsel to identify a single document showing wrongdoing by PSP, Seeley could not do so.

The fact that the individual plaintiffs stated during their depositions that they were not aware of anything PSP did incorrectly does not foreclose the possibility that there is evidence on which plaintiffs could rely in proving that PSP committed professional negligence. As we have already explained, the law does not expect laypersons to know whether professionals have satisfied their duty to use the skill, prudence, and diligence that other members of that profession commonly exercise unless it is the type of conduct about which a "layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional [services] were not such as ordinarily would have followed if due care had been exercised.' " (*Flowers*, *supra*, 8 Cal.4th at p. 1001.) There is no evidence to demonstrate that these individual plaintiffs were anything other than laypersons vis-à-vis the real estate profession. Thus, the individual plaintiffs' lack of personal

22

understanding as to how PSP may have failed in their duties cannot be seen as an admission that no failures occurred.

Moreover, these purported "admissions" about the individual plaintiffs' lack of knowledge of what PSP may have done incorrectly are the product of improper contention inquiries of a deponent. (See *Rifkind v. Superior Court* (1994) 22 Cal.App.4th 1255, 1259 (*Rifkind*).) Asking a deponent to set forth that individual's legal contentions at a deposition is "unfair," and such questions should instead be requested through interrogatories. (*Id.* at p. 1262.) "If the deposing party wants to know facts, it can ask for facts; if it wants to know what the adverse party is contending, or how it rationalizes the facts as supporting a contention, it may ask that question in an interrogatory. The party answering the interrogatory may then, with aid of counsel, apply the legal reasoning involved in marshaling the facts relied upon for each of its contentions . . . . It is a major reason why . . . '[t]aking the oral deposition of the adverse party is neither a satisfactory nor a proper way to satisfy' the interrogating party's desire to learn which facts a party thinks support its specific contentions." (*Ibid.*, italics added.)

The testimony regarding the individual plaintiffs' lack of knowledge as to what PSP did "wrong" during the transaction is the result of the type of questioning determined to be improper by the *Rifkind* court. It was provided in response to questions that required the individual plaintiffs to apply the facts known to them to the standards the law requires of a real estate professional, and plaintiffs' attorney repeatedly objected on *Rifkind* grounds. Given that contention questions of deponents are improper, these deposition responses cannot be construed as concessions that PSP acted in a manner

23

consistent with the standard of care throughout the transaction or that plaintiffs do not possess and cannot obtain evidence of a breach.

We therefore conclude that PSP failed to meet its initial burden on summary judgment to present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that PSP breached the standard of care/its fiduciary duties *or* to present evidence that plaintiffs do not possess and cannot reasonably obtain evidence to demonstrate a breach. (See *Kahn*, *supra*, 31 Cal.4th at p. 1003.)

3. *PSP failed to meet its burden to show that plaintiffs cannot prove causation.*

PSP also argued that it is entitled to judgment as a matter of law on the ground that plaintiffs are unable to prove that PSP's conduct or omissions caused their damages.

Causes of action for professional negligence and breach of fiduciary duty require proof of a proximate causal connection between the breach and the resulting injury. (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 693 [professional negligence]; *Stanley*, *supra*, 35 Cal.App.4th at p. 1086 [breach of fiduciary duty].)

"Causation exists where 'the defendant's breach of its duty to exercise ordinary care was a substantial factor in bringing about plaintiff's harm.' " (*Janice H. v. North Robertson, LLC* (2016) 1 Cal.App.5th 586, 598; accord, *Beebe v. Wonderful Pistachios & Almonds LLC* (2023) 92 Cal.App.5th 351, 370 ["The 'substantial factor' test for causation is appropriate in all tort actions."].) Under the substantial factor test, a defendant's conduct is a cause of a plaintiff's injury if: (1) the plaintiff would not have suffered the injury but for the defendant's conduct, or (2) the defendant's conduct was one of multiple causes sufficient to cause the alleged harm. (See *Rutherford v.*

24

*Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969 ["The substantial factor standard . . . subsumes the 'but for' test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact"].) With the exception of situations involving independent concurrent causes of an injury, "if the injury would have occurred even if the actor had not acted wrongfully, his or her conduct generally cannot be deemed a substantial factor in the harm." (*In re Ethan C.* (2012) 54 Cal.4th 610, 640.) "Like breach and injury, causation is a fact-specific issue for the trier of fact." (*Law Firm of Fox and Fox v. Chase Bank, N.A.* (2023) 95 Cal.App.5th 182, 205, citing *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1144.)

In its appellate briefing, PSP offers a single sentence to argue that it sufficiently demonstrated its entitlement to judgment as a matter of law on the professional negligence claim with respect to the element of causation: "The harm to Appellants—losing the properties and being in second position to Cardenas—would have happened regardless of what Respondents did." PSP's argument on this point in its summary judgment papers offers only slightly more detail:

> "Assuming for the sake of argument that there was a breach of duty, there is still no proximate cause to their damages. Plaintiffs have lost title and equity in the Properties. This was caused by Integrity and Huang disobeying the escrow instructions and adding Cardenas as a superior loan without the consent of Plaintiffs or knowledge of PSP. Integrity's failure to explain itself to Plaintiffs or PSP for how it could have done such a thing is incontrovertible evidence that PSP was not involved in their error. [¶] Moreover, the damages were caused by the cascading breaches by Urwell, Zenith, Rutherford, and Steiman to meet their obligations and their concealment of the Cardenas loans. To the extent that Plaintiffs are harmed, it is because of these defendants. Nothing PSP did

25

> caused these other parties to harm Plaintiffs. [¶] As there is no causation, summary judgment must be entered for PSP."

It almost goes without saying that these contentions do not demonstrate that a reasonable trier of fact would be precluded from finding that it was more likely than not a breach on the part of PSP was a substantial factor in plaintiffs' loss. While PSP's strategy is to highlight the alleged wrongdoing of other defendants as the cause of plaintiffs' damages, legal causation does not require that the defendant's conduct be the sole cause of a plaintiff's harm. (See, e.g., *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 132; *Union Pacific Railroad Co. v. Ameron Pole Products LLC* (2019) 43 Cal.App.5th 974, 982; see also *Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 187 ["a defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the plaintiff's harm"].) The Operative Complaint makes clear that plaintiffs are alleging not only significant malfeasance on the part of other defendants, but also that *PSP's* failure to properly investigate and identify indications of the fraud allowed it to occur without detection prior to the close of escrow. There is nothing in the separate statement of undisputed facts that demonstrates that PSP's alleged failures did not contribute to plaintiffs' injuries under this theory. For example, there is no evidence indicating that plaintiffs conceded they would have completed the sale of the three properties even if they had been told that Zenith was obtaining financing from Cardenas, or that they would have found it irrelevant that Zenith required additional financing in order to complete the purchase of the properties.

Nor is there anything in PSP's summary judgment motion papers showing that plaintiffs do not possess and cannot reasonably obtain evidence to demonstrate that PSP's alleged breaches of duty were a substantial factor

26

in bringing about plaintiffs' losses. Plaintiffs have not conceded a lack of evidence on the element of causation, and it remains possible that plaintiffs could present their own testimony to the effect that they would not have completed the sale transaction if PSP had discovered and shared information indicating that the alleged fraud was afoot.

We therefore conclude that PSP also failed to meet its initial burden on summary judgment to present evidence that negates the element of causation, or evidence that shows that plaintiffs do not have, and cannot obtain, evidence to prove causation.[9] (See *Kahn*, *supra*, 31 Cal.4th 990, 1003.)

---

[9] Given our conclusion that the record does not support the granting of summary judgment, we do not address two of plaintiffs' additional arguments. Specifically, we have no need to consider whether PSP was required to include not only the individual plaintiffs' deposition responses in its separate statement but also relevant evidence that was less favorable to them, such as plaintiffs' responses to interrogatories on similar matters, pursuant to the "rule of completeness." For similar reasons, we also decline to comment on plaintiffs' assertion that the trial court erred in implicitly overruling their evidentiary objections to certain portions of Rook's declaration. Even if we assume the objections were properly overruled, the evidence offered by PSP does not demonstrate its entitlement to judgment as a matter of law.

## DISPOSITION

The judgment in favor of PSP is reversed with directions to enter an order denying PSP's motion for summary judgment. The parties shall bear their own costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

28