[Civ. No. 10238. First Appellate District, Division Two.—April 12, 1937.]

T. E. STEVENSON et al., Respondents, v. ALTA BATES, INC. (a Corporation), et al., Appellants.

Weinmann, Quayle & Berry for Appellants.

Elliott Johnson and W. I. Follett for Respondents.

STURTEVANT, J.—This is an action to recover damages for personal injuries. The plaintiff, Mrs. T. E. Stevenson, suffered certain injuries while a patient in the Alta Bates Hospital and thereafter she and her husband commenced this action against the hospital and Miss Ruby Pike, one of the nurses assigned to her case. Mrs. Stevenson was at the time about fifty-six years of age and on August 20, 1934, she suffered a stroke of apoplexy. She was taken to the Alta Bates Hospital for treatment under the care of her own physician, Dr. D. Scott Fox. As a result of the attack Mrs. Stevenson was paralyzed on the left side. The left leg and the left arm were for the time being wholly paralyzed. However, her case gradually improved and in the month of December, 1934, or the month of January, 1935, her physician undertook to teach her to walk. Miss Pike and Mrs. Swendson were assigned as nurses to carry out the instructions of the patient's doctor. On the 30th day of January, 1935, while the teaching was being conducted, Mrs. Stevenson fell and for injuries sustained in the fall she commenced this action against the hospital and the nurses above mentioned. Afterwards the action was dismissed as to Mrs. Swendson. The jury returned a verdict in favor of the plaintiffs against the other defendants in the sum of $8,000. The defendants made a motion for a new trial based on the statutory grounds, including among others that the verdict was excessive. The trial court made an order that the motion would be denied if the plaintiffs agreed to accept $5,000 instead of $8,000, otherwise that the motion would be granted. The plaintiffs

filed a remission of $3,000 and thereafter the defendants appealed.

On the trial the plaintiffs called Dr. Fox as a witness and from him elicited evidence to the effect that he was and had been for fifteen years a physician and surgeon practicing his profession in Berkeley and was called by Mrs. Stevenson to treat her in August, 1934. He was then asked numerous questions and testified as to the condition of Mrs. Stevenson when he first called on her and the nature of the attack from which she was suffering. Having elicited those facts, counsel for the plaintiffs passed the witness for cross-examination. The cross-examination proceeded as follows: Counsel for the defendants at first addressed themselves to the subject-matter contained in the direct examination which we have endeavored to set forth above. Counsel then asked several questions apparently for the purpose of showing that the break of the left femur was what is termed as a spontaneous break and that it was not referable to anything that happened on January 30, 1935. Continuing counsel then propounded many questions regarding the method of treating one who has suffered from a cerebral hemorrhage and who has been paralyzed. Dr. Fox testified that the first step was to provide a period of rest so that the tissues can restore themselves as much as nature can restore them, and to obviate the possibility of increasing the hemorrhage. After that period of rest in bed, the program is to get the patient up and start using the paralyzed member again. The procedure is very much the same as would be used in the case of a small child first learning to walk. Throughout the cross-examination no objection was made by the plaintiffs material to any point that is made on this appeal.

On redirect examination, in reply to questions propounded by the plaintiffs, Dr. Fox stated that after the fall he had consulted with the authorities of Alta Bates Hospital and that one of its attorneys had been in his office. Then the following proceedings occurred: "Mr. Johnson: Did you have Mrs. Stevenson's consent to disclose anything to the lawyer? Mr. Berry: I object upon the ground that this is cross-examination of his own witness. . . . It is impeachment of his own witness. Mr. Johnson: Yes, it is. Mr. Berry: There is no law against nor any impropriety concerning interviewing any witness in any case. . . . The law on that, if your Honor please, is to the effect that when a

patient files his suit for damages such act is a waiver of the confidential relationship . . . I object on the ground this is impeaching his own witness. The Court: Well, he admits that. Well, you may answer the question. A. I had no permission."

In their briefs the defendants repeat the contentions made in the trial court and claim that the trial court erred for the several reasons assigned in their objections. As appears from the record it is admitted the question was in the nature of cross-examining and impeaching one's own witness. The defendants assert, therefore, the ruling was prejudicial error. That much of the contention of the defendants may not be sustained. The authorities are not in accord. But, in *Commonwealth* v. *Reeves,* 267 Pa. 361 [110 Atl. 158], on page 159, the Supreme Court of Pennsylvania had this to say: "The rule that the party calling a witness is not permitted to ask leading questions and is bound by his testimony is liberally construed in modern practice. (*Gantt* v. *Cox & Sons Co.,* 199 Pa. 208 [48 Atl. 992].) It apparently proceeds upon the theory, as stated by text-writers, that a rigid adherence to the practice in ordinary cases would be *mala fides* to the tribunal, and the weight of authority is in favor of the rule that, where a party is surprised in the testimony of a witness by his unexpectedly turning hostile, counsel may exercise the right of cross-examination of the witness, or impeach his testimony by other witnesses. Such exceptions have been recognized in Pennsylvania and are permitted to prevent a failure of justice. (*Cowden* v. *Reynolds,* 12 Serg. & R. 281; 1 Greenleaf on Evidence, sec. 444; *Bank* v. *Davis,* 6 Watts & S. 285; *McNerney* v. *Reading City,* 150 Pa. 611 [25 Atl. 57]; *Commonwealth* v. *Wickett,* 20 Pa. Super. Ct. 350.) Whether such practice will be permitted is within the sound discretion of the court, and its action will not be reviewed by this court unless there is an abuse of that discretion." The doctrine as stated by that court has been declared by many courts. (See the Modern Law of Evidence, Chamberlayne, vol. 5, sec. 3744 and notes; *State* v. *Wolfe,* 109 W. Va. 590 [156 S. E. 56, 74 A. L. R. 1039] and notes.) The question as to a showing of surprise rests in the sound discretion of the trial court. The statement of counsel that he has been taken by surprise has been accepted. (*Tacoma Ry. & Power Co.* v. *Hays,* 110 Fed. 496; *Zipperlen* v. *South-*

*ern Pac. Co.,* 7 Cal. App. 206, 218 [93 Pac. 1049]; *People* v. *Marsiglia,* 52 Cal. App. 385, 387 [198 Pac. 1007].) The questions were allowed without making any showing. (*Schonfeld* v. *United States,* 277 Fed. 934; *Thomasson* v. *State,* 80 Ark. 364 [97 S. W. 297]; *Commonwealth* v. *Delfino,* 259 Pa. 272 [102 Atl. 949]; *Southworth* v. *State,* 52 Tex. Cr. Rep. 532 [109 S. W. 133].) In criminal cases the district attorney usually has in court the depositions taken before the magistrate or the evidence taken before the grand jury. Testimony given in court at variance with the depositions is, of course, some showing. (*Commonwealth* v. *Spardute,* 278 Pa. 37 [122 Atl. 161]; *State* v. *Waldrop,* 73 S. C. 60 [52 S. E. 793].) In other cases refusal of permission to make a showing, or denial of privilege to ask impeaching questions after showing duly made, were upheld as being within the discretion of the trial court. (*Hickory* v. *United States,* 151 U. S. 303 [14 Sup. Ct. 334, 38 L. Ed. 170]; *Appeal of Carpenter,* 74 Conn. 431 [51 Atl. 126].) However, the question as propounded implied an impropriety on the part of Dr. Fox in discussing the case with the defendants without permission of his patient. The plaintiffs contend that section 14 of Act 4807, Deering's General Laws, authorized the question objected to. We find nothing in that section that gives the plaintiffs any support. The defendants contend that when the plaintiffs commenced this action they thereby consented that Dr. Fox might testify in the action (Code Civ. Proc., sec. 1881, subd. 4), and that such consent implied that the defendants might interview him before using him as a witness. Plaintiffs do not reply to that contention but they call to our attention the fact that the trial court gave an instruction, acting upon the request of the defendants, which quoted the provisions of the statute just cited. Thereupon plaintiffs assert the error, if any, was cured. We cannot follow them. The instruction was not so specific as to eliminate the error. ■ But, after an examination of the entire cause this court is not of the opinion that the error complained of has resulted in a miscarriage of justice. (Const. of Calif., art. VI, sec. 4½.)

■ After numerous other questions had been propounded to Dr. Fox the plaintiffs adverted to the doctor's testimony to the effect that he approved the manner in which Mrs. Swendson and Miss Pike handled the case. Then their counsel asked the doctor if, on the same day that the accident

happened, he did not have a conversation with the plaintiff, Captain Stevenson, and did not state to the captain, "The nurses let your wife fall down and it was inexcusably careless." The defendants objected that the question was an attempt on the part of the plaintiffs to impeach their own witness, that it was cross-examination of their own witness, that no foundation had been laid showing hostility or surprise, and that it was grossly improper. The court overruled the objection and the witness answered, "I don't recall". As shown by the authorities cited above there are exceptions to the rule and it is too broad to state that one may not impeach his own witness or that he may not cross-examine his own witness. They also show that the foundation showing hostility or surprise is addressed to the sound discretion of the trial court and the ruling of the latter will not be disturbed except on a showing of abuse. Later Captain Stevenson was called by the plaintiffs and he was asked what statement Dr. Fox had made to him. No objection to the question was made and Captain Stevenson stated that he had the conversation and Dr. Fox said, "He didn't see how they let her do it, or words to that effect, he don't see how they let her go down." It is clear that nothing is before us except the mere asking of the question propounded to Dr. Fox. The authorities agree that was not error. (*Melhuish* v. *Collier*, 15 Ad. & El. N. S. 878 [117 Eng. Rep. 694].)

The defendants complain because the trial court refused an instruction which they had requested and which was to the effect that the negligence or non-negligence of the defendants could be proved only by the testimony of competent expert evidence. (*Patterson* v. *Marcus*, 203 Cal. 550 [265 Pac. 222].) The plaintiffs do not question that rule but contend it applies only to such facts as are peculiarly within the knowledge of such professional experts and not to facts which may be ascertained by the ordinary use of the senses of a non-expert. (*Barham* v. *Widing*, 210 Cal. 206, 214 [291 Pac. 173].) That contention, with reference to the facts of the instant case, we think is well founded.

The defendants also claim there was no factual support for the verdict, however, we are unable to reach that conclusion. On January 30, 1935, Mrs. Stevenson had so far recovered that with assistance she could walk. With the assistance of one person and her cane she could stand. In-

deed, with the assistance of one person and her cane she could walk short distances. In the morning of that day at about 9:30, Mrs. Swendson and Miss Pike had taken their patient to the sun room. They had stepped out of the elevator and were in the room. As they entered Mrs. Stevenson carried a substantial cane in her right hand. Mrs. Swendson was walking at her right side firmly holding her right arm. Miss Pike carried a blanket and was walking on Mrs. Stevenson's left side holding the patient's left arm which was resting in Miss Pike's right hand. Having entered the sun room Miss Pike released her hand and stepped forward to prepare the chair in which the patient was to be seated. Although there was testimony that on other occasions, before releasing her hold on the patient, Miss Pike made statements to the effect that she was about to do so, on this particular occasion there was evidence that she made no statement regarding her intention of releasing her hold on the patient. There was evidence that immediately after Miss Pike so released her hand Mrs. Stevenson began to totter or fall. Under these circumstances we think it may not be said, as a matter of law, that there was no evidence of negligence and no basis on which the jury might have inferred negligence.

The defendants' last point is that the verdict is excessive. In that connection they call to our attention that they introduced substantial evidence to the effect that Mrs. Stevenson's broken bone was not caused by the above-mentioned fall but that it was a spontaneous fracture. True it is that they introduced such evidence and it is also true that the trial court instructed the jury on that issue. But the verdict of the jury is an implied finding against the defendants. The latter do not claim there was no conflict in the evidence. Therefore this court may not disturb the finding of the jury. After the fall the broken bone was carefully treated and in due time it duly knitted. That normal healing was a fact on which the jury was entitled to, and we may assume did, base an inference that the break was not spontaneous.

The defendants do not cite any portions of the record showing that the amount of the verdict, as modified, was obviously so disproportionate to the injury proved as to justify the conclusion that the verdict was not the result of the cool, dispassionate discretion of the jury. In the absence of that showing a court of review will not hold a verdict

excessive. (*Darling* v. *Pacific Elec. Ry. Co.*, 197 Cal. 702, 715 [242 Pac. 703].)

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 10, 1937.