[No. C060591. Third Dist. Dec. 22, 2009.]

CARL R. MASSEY, Plaintiff and Appellant, v.
MERCY MEDICAL CENTER REDDING et al., Defendants and
Respondents.

COUNSEL

Michael A. Doran for Plaintiff and Appellant.

Kenny, Snowden & Norine and Kelly J. Snowden for Defendants and Respondents.

OPINION

**BUTZ, J.**—This is a negligence action against a nurse and, vicariously, the hospital that employed the nurse. Plaintiff Carl R. Massey was a postoperative patient who sustained injury after falling from a walker. The nurse had placed plaintiff on the walker and then left him unattended.

■ We conclude that the question of the nurse's alleged negligence for the fall poses a question of common knowledge, and therefore does not require expert opinion testimony. Consequently, we shall reverse that part of the trial court's judgment that concluded otherwise and that dismissed the negligence action after plaintiff made his opening statement. We shall affirm that part of the judgment that denied plaintiff's attempt to amend his complaint to add causes of action for battery, fraud and elder abuse.

## FACTUAL AND PROCEDURAL BACKGROUND

Besides concluding that the issue of the nurse's alleged negligence regarding plaintiff's fall required expert opinion testimony, the trial court found plaintiff's expert unqualified on this issue. With plaintiff lacking the required expert, defendants Ken O'Bar, a registered nurse, and his employer, Mercy Medical Center Redding (hereafter O'Bar or Nurse O'Bar and Mercy, respectively), moved successfully for nonsuit after plaintiff's opening statement, and the case was dismissed.[1]

---

[1] O'Bar died in June 2009. Plaintiff intends to substitute O'Bar's estate.

Plaintiff's opening statement specified the following evidence, which we must fully credit because we are reviewing a successful defense motion for nonsuit that precluded plaintiff from presenting his case to the jury for decision. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838–839 [206 Cal.Rptr. 136, 686 P.2d 656] (*Carson*).) We will cover the highlights of this evidence now, and detail it when we discuss the negligence cause of action in the Discussion below.[2]

Plaintiff, who was then 65 years of age, underwent bifemoral bypass surgery on March 3, 2006, to improve circulation in his legs. This procedure involved making incisions in plaintiff's abdomen and groin.

After plaintiff's surgery, nurses caring for him (including defendant O'Bar) noted that he was a substantial fall risk and placed him on a fall prevention protocol that included a walker and assistance.

On the evening of March 9, 2006, plaintiff used his call light to summon a nurse to help him go to the bathroom. Nurse O'Bar arrived, set plaintiff on the walker, and then told plaintiff he (O'Bar) had to go do something and would be right back. When "right back" became 15 minutes, plaintiff lost patience and tried to move on his own with the walker. He fell and suffered a compression fracture to his back.

Based on this evidence, plaintiff sued O'Bar and O'Bar's employer, Mercy, for "ordinary" negligence. Subsequently, plaintiff moved to amend his complaint to allege "medical" negligence based on this same evidence; and to allege battery, fraud, and elder abuse based on O'Bar injecting plaintiff, about four hours after plaintiff was found to have fallen, with morphine sulfate without a valid prescription and without informed consent.

The trial court allowed the "medical" negligence cause of action to replace the action for "ordinary" negligence, but denied the addition of the battery, fraud and elder abuse counts. (See *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 995 [35 Cal.Rptr.2d 685, 884 P.2d 142]

---

[2] At oral argument, defense counsel disputed even the basic facts of this case. We reiterate: Because we are reviewing a judgment of nonsuit against plaintiff, our review is limited to plaintiff's evidence, which we must review in plaintiff's favor. (*Carson, supra,* 36 Cal.3d at pp. 838–839.) Our conclusion, then, that Nurse O'Bar's alleged negligence for plaintiff's fall poses a question of common knowledge is based on plaintiff's evidence reviewed in the nonsuit context. Defense counsel did concede at oral argument that, at the time of plaintiff's fall, plaintiff was on a fall prevention protocol.

(*Flowers*) [substantively, "ordinary" and "professional" negligence comprise just one form of action].) It was this "medical" negligence cause of action on which plaintiff gave his opening statement and on which the trial court granted the defense's motion for nonsuit.

## DISCUSSION

### The issues

On appeal, plaintiff raises three issues. He contends the trial court erroneously (1) required expert opinion testimony to establish negligence concerning his fall; (2) found his expert unqualified on this issue; and (3) denied his motion to amend his complaint to allege causes of action for battery, fraud, and elder abuse. We agree with plaintiff regarding his first contention, rendering his second contention moot: Expert opinion testimony is not required to establish negligence for plaintiff's fall. As for plaintiff's third contention, we conclude the trial court did not abuse its discretion.

### Issues (1) and (2): The Issue of Expert Testimony Involving Plaintiff's Fall and the Disqualification of Plaintiff's Expert

■ Generally, "negligence" is the failure to exercise the care a reasonable person would exercise under the circumstances. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 31 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*).) Medical negligence is one type of negligence, to which general negligence principles apply. (*Ibid.*; *Flowers, supra*, 8 Cal.4th at pp. 995, 997.)

Accordingly, a nurse is negligent if he or she fails to meet the standard of care—that is, fails to use the level of skill, knowledge, and care that a reasonably careful nurse would use in similar circumstances. (*Alef v. Alta Bates Hospital* (1992) 5 Cal.App.4th 208, 215 [6 Cal.Rptr.2d 900] (*Alef*); CACI No. 504.)

■ "The standard of care against which the acts of a medical practitioner [including a nurse] are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony, unless the conduct required by the particular circumstances is within the common knowledge of laymen." (*Alef, supra*, 5 Cal.App.4th at p. 215.) In other words, expert opinion testimony is

required to prove that a defendant nurse did not meet the standard of care and therefore was negligent, "except in cases where the negligence is obvious to laymen." (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523 [78 Cal.Rptr.2d 122].)

We think the alleged negligence concerning plaintiff's fall is within the common knowledge of laymen, and therefore expert opinion testimony is not required to determine the culpability of Nurse O'Bar.

As shown by the evidence set forth in plaintiff's opening statement, at the time of his fall, plaintiff was a 65-year-old man who, just a few days before, had undergone a surgery to improve the femoral artery circulation in his legs. This surgery involved cutting open plaintiff's abdomen and making tunnels in his groin and then threading tubes from his aorta through the tunnels to his leg arteries.

Nurses caring for plaintiff following the surgery (including defendant O'Bar) noted: (1) plaintiff scored 60 on the Morse Fall Scale (this scale is a standardized fall assessment that is scored from zero to 100 based on commonsense criteria; any score over 45 is deemed a fall risk); (2) plaintiff was placed on a fall prevention protocol; (3) his bed rails were placed up; (4) he was to use a walker and assistance to ambulate (the walker was apparently placed across the room and was to be obtained by a nurse); and (5) his gait was weak. Along similar lines, plaintiff's physical therapist noted that plaintiff needed to be assisted in walking, and that on the day before plaintiff fell (March 8), he had walked about 120 feet with assistance or supervision with his walker.

On the night of his fall, plaintiff used his call light around 7:00 p.m. to summon a nurse to help him go to the bathroom. Nurse O'Bar responded. O'Bar obtained the walker from the corner of the room, lowered plaintiff's bed railings, assisted plaintiff out of bed, and set plaintiff upon the walker. O'Bar then told plaintiff that he (O'Bar) had to go do something and would be right back. Plaintiff stood for about 15 minutes while waiting on the walker. Losing patience, plaintiff tried to move on his own. He attempted a step forward, lost his balance, and fell backwards against the wall and floor of his room, hitting his back, head and behind as he crumpled onto the floor. Apparently, he was not discovered for nearly two hours. He suffered a compression fracture to his back at T-12.

We think the alleged negligence (standard of care and breach) involving Nurse O'Bar's conduct as to plaintiff's fall is within the sphere of common knowledge and obvious to laymen: insufficiently attending to a fall-risk patient who needed assistance to walk short distances with a walker.

The fall in the present case falls squarely on the legal turf of *Stevenson v. Alta Bates, Inc.* (1937) 20 Cal.App.2d 303 [66 P.2d 1265] (*Stevenson*), because the mishaps in the two cases are quite similar. In *Stevenson*, the court held that the common knowledge exception applied to a negligence action against a nurse and the nurse's hospital employer. (*Id.* at pp. 309–310.) The 56-year-old patient in *Stevenson*, after partially recovering from a paralyzing stroke to her left side, was being assisted in walking by a nurse on each side of her and by a cane she held in her right hand. The patient fell when the left-side nurse released the patient's arm to prepare the chair for the patient to sit in. (*Ibid.*) The patient's recuperative status at the time of her fall was that she could stand and walk short distances with the assistance of one person and her cane. (*Ibid.*) On these facts, the *Stevenson* court concluded that the application of the common knowledge exception was "well founded." (*Id.* at p. 309; see also *Griffin v. County of Colusa* (1941) 44 Cal.App.2d 915, 917, 923 [113 P.2d 270] (*Griffin*) [implicitly applying common knowledge exception to a nurse whose duty was to attend a patient who was delirious and who fell from her hospital bed while unattended].)

If anything, the facts of the present case display a stronger hold on the common knowledge exception than does *Stevenson*. This is because the patient's condition in *Stevenson* was that she could stand and walk short distances with the assistance of *one* person and her cane, and this was the assistance being provided at the time of her fall (since *two* nurses had assisted her right before her chair was prepared). (*Stevenson, supra*, 20 Cal.App.2d at pp. 309–310.)

■ Citing *Stevenson* and *Griffin*, a California treatise covering medical malpractice concludes that "[i]nstances in which nursing neglect can be inferred from common knowledge and experience include the following: [¶] . . . [¶] Insufficient attendance on helpless or severely disabled patient[s]." (Cal. Tort Guide (Cont.Ed.Bar 3d ed. 2009) Medical Malpractice, § 9.53, Nurses, pp. 426–427.)

Defendants counter by arguing that "[e]ven under plaintiff's facts, an expert opinion is required to determine whether plaintiff had the ability to be out of bed, his ability to ambulate independently with a front wheel walker,

and whether he required constant assistance to ambulate with a walker to and from the bathroom." Under this reasoning, an expert would have been necessary in *Stevenson* too: to detail the degree of paralysis of the patient there and its effect on walking assistance. But that is not what happened in *Stevenson*, nor in *Griffin*, and with good reason. Once the condition of the patient is factually established as helpless or severely disabled—as in *Stevenson, Griffin*, and here—common knowledge and experience can be used to determine whether the patient fell because she or he was insufficiently attended to by medical personnel.

The trial court got off track by emphasizing how infrequently the common knowledge exception applies; however, the trial court made its point in the context of *physician specialists*. Here, we deal with a nurse. Undoubtedly, "[t]oday's nurses are held to strict professional standards of knowledge and performance . . . ." (*Fraijo v. Hartland Hospital* (1979) 99 Cal.App.3d 331, 342 [160 Cal.Rptr. 246].) But "[s]ome difficulties are presented [in the nursing malpractice context] by the fact that a nurse's traditional role has involved 'both routine, nontechnical tasks as well as specialized nursing tasks. If, in considering the case law in this area, the dispute is analyzed in terms of what action by the nurse is being complained about, it is possible to make some sense out of the relevant decisions.' " (*Ibid.* [quoting an out-of-state law review article].) Nurse O'Bar was engaged here in a routine, nontechnical task of assisting a fall-risk patient to walk a short distance to the bathroom. The common knowledge exception applies to this task.

We conclude that plaintiff may pursue his fall-based negligence action against Nurse O'Bar and Mercy without expert opinion testimony on standard of care and breach. This moots plaintiff's second contention that the trial court erroneously disqualified his expert from testifying on these subjects.

### Issue (3): Plaintiff's Motion to Amend His Complaint to Add Counts for Battery, Fraud, and Elder Abuse

Plaintiff claims the trial court erroneously denied his motion to amend his complaint to add causes of action for battery, fraud, and elder abuse. Contrary to defendants' threshold argument about appealability, plaintiff may pursue this ruling as part of his appeal from the ensuing judgment. (*North 7th Street Associates v. Constante* (2001) 92 Cal.App.4th Supp. 7, 9–10 [111 Cal.Rptr.2d 815].)

Each of these three proposed causes of action is based on plaintiff's allegation that Nurse O'Bar administered morphine sulfate to him without a

valid prescription and without informed consent, about four hours after plaintiff was discovered to have fallen; this was done to conceal any responsibility on O'Bar's part for the fall.

A trial court's ruling denying a motion to amend the complaint is reviewed for abuse of discretion, recognizing that amendments are liberally permitted. (*Fogel v. Farmers Group, Inc.* (2008) 160 Cal.App.4th 1403, 1424 [74 Cal.Rptr.3d 61].) We find no abuse here.

## A. Battery

■ Preliminarily, as the trial court found, a medical act performed without a patient's informed consent (such as the alleged morphine injection here) is medical negligence, not battery. (*Cobbs v. Grant* (1972) 8 Cal.3d 229, 240–241 [104 Cal.Rptr. 505, 502 P.2d 1].) And, as we shall next explain, the trial court also properly found this allegedly negligent act of administering morphine to be time-barred.

Plaintiff does not dispute that the one-year statute of limitations for medical negligence for the injury (the fall) began to run on March 9 to 10, 2006, the date of injury and its discovery or reasonably diligent discovery, respectively. (Code Civ. Proc., § 340.5.) Plaintiff filed his original complaint on February 21, 2007. He did not file his motion to amend the complaint, however, until January 23, 2008, after this one-year deadline had passed.

■ For an amended medical malpractice complaint to "relate back" to the original complaint for statute of limitation purposes, the amended complaint "must (1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original one." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408–409 [87 Cal.Rptr.2d 453, 981 P.2d 79]; see *Barrington v. A. H. Robins Co.* (1985) 39 Cal.3d 146, 150–151 [216 Cal.Rptr. 405, 702 P.2d 563].) This is not the situation here. The original complaint alleged that Nurse O'Bar was negligent for leaving plaintiff unattended on his walker, causing plaintiff to fall. The amended complaint, by contrast, alleges that Nurse O'Bar was negligent because he administered morphine sulfate to plaintiff without a valid prescription and without in-formed consent, to cover up the fall. Consequently, plaintiff's cause of action for the morphine-based negligence is not within the "relation-back" doctrine.

Recognizing this, plaintiff alternatively argues that the one-year statute of limitations should have been tolled regarding the morphine act based on

receipt of medical records at some point after the March 10, 2006 injury. But the limitations period begins to run, not when medical records are obtained, but when one suspects, or reasonably should suspect, that he has been injured in some wrongful way (i.e., the fall, for which the morphine was given). (*Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1295, 1298–1299 [13 Cal.Rptr.3d 700].)

These remarks on statute of limitations point to an even more fundamental problem for plaintiff's alleged morphine-based negligence action: Because the morphine was given to cover up the negligence for the fall, plaintiff does not have an *independent* negligence cause of action for the morphine injection.

In a last-ditch effort to save the morphine-based negligence cause of action, plaintiff, on appeal, claims that fraud tolled the statute of limitations for it. We reject this claim in the part that follows on fraud; in any event, fraud does not make an independent negligence cause of action for the morphine injection any more viable.

### B. Fraud

Plaintiff alleges that Nurse O'Bar intentionally administered the morphine sulfate without prescription and consent in order to conceal O'Bar's responsibility regarding the fall.

Plaintiff bases this count on two chart notes from Nurse O'Bar. The first note states as follows. Plaintiff was found by O'Bar slumped against the wall in his room at 9:10 p.m. on March 9, 2006. Plaintiff asked O'Bar if this fall would now preclude his discharge from the hospital. O'Bar replied that the reason for the fall was more important to consider because plaintiff may be too weak to be discharged. The first chart note added: "Left subclavian IJ removed in witness of James Roemmich, RN, and no problems."

The second chart note from O'Bar documented the challenged morphine sulfate injection, stating: "[Plaintiff] [r]emains alert, oriented, appropriate with responses, and he reports subjective relief from Darvocet in early shift and then from morphine sulfate in later shift. Okay. Complained of back pain . . . and pain in left chest without changing telemetry. Offer and accepts morphine sulfate, five milligrams IVP with subsequent sleep."

In ruling on the motion to amend the complaint for fraud, the trial court stated: "Plaintiff has not submitted competent evidence that the morphine was

given without a prescription. . . . [P]laintiff submits no competent evidence that the [physician] order [for morphine] expired or was not renewed. Plaintiff contends that the fact of the fall was concealed[;] however, the evidence demonstrates that the fall was documented in the chart notes [and, we add, another RN was listed as a witness in those notes]. Plaintiff cannot establish concealment, knowledge of falsity or intent to defraud."

Plaintiff replies that Nurse O'Bar fraudulently concealed the *severity* of the fall through the morphine sulfate injection, so that plaintiff could be discharged from the hospital without incident. But the morphine alleviation would lapse long before any litigation deadline, and any injury as a result of a severe fall would then be felt. The second chart note of Nurse O'Bar, the one regarding the morphine injection, also states that plaintiff complained of back pain (plaintiff suffered a compression fracture to his back from the fall). Finally, plaintiff himself knew he fell, hitting his back, head and behind, and plaintiff and Nurse O'Bar discussed the fall on the night it occurred.

For these same reasons, we reject plaintiff's related argument on appeal that this alleged fraud tolled the statute of limitations for his proposed negligence cause of action based on the morphine injection (i.e., plaintiff's alleged "battery," arising from the injection of morphine sulfate without informed consent—see discussion, *ante*; as we also concluded in that discussion, the alleged morphine negligence is not an independent cause of action).

We do not find the trial court abused its discretion regarding the proposed fraud cause of action.

## C. Elder Abuse

The proposed cause of action for elder abuse fails in light of the adverse ruling we just upheld on the proposed fraud action. As the trial court noted, "Plaintiff's proposed cause of action [for elder abuse] is based on the injection of morphine without informed consent and with the intent to defraud and conceal [Nurse O'Bar's] responsibility for the fall that occurred. . . . The evidence submitted does not show the necessary recklessness or deliberate disregard that would sustain a cause of action for Elder Abuse." (See *Delaney, supra*, 20 Cal.4th at p. 31 [statutory elder abuse requires more than negligence; the ticket is reckless, oppressive, fraudulent or malicious conduct].) Again, we find no abuse of discretion on the trial court's part.

## DISPOSITION

The judgment is reversed to the extent it (1) dismissed plaintiff's cause of action for negligence against Nurse O'Bar and Mercy for plaintiff's fall (the common knowledge exception applies), and (2) awarded costs to defendants. In all other respects, the judgment is affirmed. Plaintiff is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)

Blease, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied January 13, 2010.