Filed 5/1/26  Berry v. Ogbuehi CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ROLAND ALFRED BERRY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CLEMENT OGBUEHI,<br><br>Defendant and Respondent. | F089631<br><br>(Super. Ct. No. 23CU0433)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Valerie R. Chrissakis and Melissa R. D'Morias, Judges.*

Roland Alfred Berry, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Iveta Ovsepyan, Assistant Attorney General, Rolando Pasquali and David Klehm, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

Roland Berry, an incarcerated prisoner, is plaintiff and appellant in this medical malpractice action against defendants Dr. Karim Rasheed, an ophthalmologist in private

---

* Judge Chrissakis issued the pre-trial orders; Judge D'Morias presided over the jury trial.

practice, and Clement Ogbuehi, a physician's assistant employed by the California Department of Corrections. Dr. Rasheed obtained summary judgment in his favor and was the respondent in a prior appeal filed by Berry from the ensuing judgment of dismissal. As for Obguehi, the malpractice claim against him proceeded to jury trial and the jury returned a verdict in his favor. Berry now appeals from the subsequent judgment; he challenges various pretrial orders made by the trial court, as well as a ruling the court rendered during the trial. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

**Berry's Eye Surgery and Related Infection**

Berry, who is 79 or 80 years old, is incarcerated at the California Substance Abuse Treatment Facility at Corcoran State Prison (Corcoran). As reflected in Berry's medical records in the record on appeal, in 2022, Berry suffered from glaucoma in both eyes. Cataract surgery was recommended for his left eye, and cataract and glaucoma surgeries were recommended for his right eye.

Dr. Rasheed, an ophthalmologist at Sani Eye Center in Templeton, performed these surgeries on Berry and provided follow up care on an outpatient basis. Ogbuehi, the respondent in this appeal, was employed at that time as a physician's assistant by the California Department of Corrections at Corcoran. Ogbuehi also had a role in Berry's treatment with respect to his eye conditions during the relevant period.

Dr. Rasheed performed cataract extraction surgery on Berry's left eye (with a lens implant) on March 9, 2022. Berry appeared to tolerate the procedure well, with no undue complications. Thereafter, on March 23, 2022, Dr. Rasheed performed cataract

---

[1] We granted a motion to augment the record filed by Berry. Based on the motion to augment, the record on appeal in this matter includes the record on appeal filed in this court in Berry's prior appeal, that is, his appeal from the judgment of dismissal in favor of Dr. Rasheed. (*Berry v. Rasheed, et al.*, Case No. F088719 [affirming judgment].) The factual and procedural background delineated here is drawn almost verbatim from our opinion in that prior appeal, Case No. F088719.

2.

extraction surgery and glaucoma surgery on Berry's right eye; a stent was placed in the eye to address the glaucoma. Berry was subsequently seen by Dr. Rasheed for regular follow-up care.

During a follow-up examination on June 1, 2022, Dr. Rasheed diagnosed Berry with a serious eye infection, endophthalmitis, in his right eye. Dr. Rasheed performed "an urgent anterior chamber vitrectomy" and "AC tap (wash out) with antibiotic injection," among other procedures, to treat the infection. After additional follow-up visits, on August 15, 2022, Dr. Rasheed recommended a "consultation with a retina specialist for right eye vitrectomy to remove vitreous debris and improve visual acuity." Thereafter, Berry began treatment with a retina specialist, Dr. Derek Lauritzen.

**Berry's Medical Malpractice Complaint**

On October 30, 2023, Berry filed in the Kings County Superior Court, the complaint initiating the instant action; the complaint named Dr. Rasheed and Ogbuehi as defendants. The complaint asserted that Dr. Rasheed and Ogbuehi committed medical malpractice in treating Berry's right eye, leading to loss of vision in that eye. More specifically, Berry alleged in his complaint:

> "On May 27, 2022, plaintiff was ex[p]eriencing severe vision loss after undergoing right eye cataract surgery performed by defendant Karim Rasheed, MD, at Sani Eye Center, Templeton … Plaintiff contacted medical staff at the California Substance Abuse Treatment Facility and State Prison (SATF), where plaintiff informed [a nurse] that plaintiff could not see out of his right eye and was ex[p]eriencing severe right eye pain … [The nurse] contacted defendant [Ogbuehi], PA, by phone call, and notified [him] that plaintiff was experiencing severe right eye pain with vision loss, and required an outside emergency examination. Defendant Ogbuehi told [the nurse] that there is nothing we can do for him, give him a morphine pill, and send him (plaintiff) back to his housing unit, and tell him (plaintiff) to see the doctor on his yard tomorrow morning. Defendant Obguehi [showed] deliberate indifference to plaintiff's serious medical needs … It was not until June 1, 2022 that defendant Rasheed, MD, reported that plaintiff's right eye was severely infected.…

3.

"[¶] On August 15, 2022, two months after defendant Rasheed detected … plaintiff's severe right eye infection, and approximately five months after performing cataract surgery, defendant Rasheed recommended that plaintiff be seen by a retina specialist for a vitrectomy to remove vitreous debris … It was not until October 5, 2022, that plaintiff learned, to what extent of eye damage, defendant Rasheed caused as a result of malpractice." (Some capitalization omitted.)

Berry sought compensatory and punitive damages in his complaint.

**Trial Court Proceedings**

On September 5, 2024, the trial court granted Dr. Rasheed's motion for summary judgment. Judgment in favor of Dr. Rasheed was entered on September 19, 2024.

Berry's claims against Ogbuehi proceeded to jury trial. The jury found Ogbuehi did not commit medical negligence. Thereafter, judgment was entered in favor of Ogbuehi on January 31, 2025. This appeal followed.

Since the resolution of Berry's claims on appeal does not turn on the evidence presented at trial, we need not summarize the trial evidence here.

## DISCUSSION

Berry challenges: (1) the trial court's granting of Ogbuehi's pretrial motion to strike Berry's punitive damages claim; (2) the trial court's denial of Berry's pretrial motion for entry of default against Ogbuehi; (3) the trial court's denial of Berry's pretrial motion for appointment of a medical expert; and (4) the trial court's denial of Berry's request, during trial, for a body attachment bench warrant for Dr. Rasheed, for purposes of securing his expert testimony/opinion testimony at trial. For reasons discussed below, we affirm.

## I. Trial Court's Granting of Ogbuehi's Motion to Strike Berry's Punitive Damages Claim

Berry contends the trial court abused its discretion in granting Ogbuehi's motion to strike his punitive damages claim. We reject this contention. (See *Abbott*

4.

*Laboratories v. Superior Court* (2020) 9 Cal.5th 642, 651 [we review an order striking all or part of a pleading for abuse of discretion].)

### A.    Background

On May 7, 2024,[2] Ogbuehi filed a motion to strike Berry's claim for punitive damages on grounds that Berry had not complied with Code of Civil Procedure[3] section 425.13; this was Ogbuehi's first appearance in the case. Under section 425.13, any claim for punitive damages against a healthcare provider must be preceded by a motion requesting leave to file such a claim.[4]

Berry opposed the motion asserting, inter alia, that he was exempted from complying with section 425.13 because he had moved for trial preference. Berry had filed, on April 22, a motion for trial-setting preference on grounds he was over 70 years old and in ill health. (See § 36, subd. (a).)

On June 10, the trial court heard and granted Ogbuehi's motion to strike Berry's punitive damages claim. The same day, the court granted Berry's motion for trial preference and set an early trial date.

---

[2] Subsequent references to dates are to dates in 2024 unless stated otherwise.

[3] Subsequent statutory references are to the Code of Civil Procedure unless stated otherwise.

[4] Section 425.13, subdivision (a) provides:

"In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier."

### B.     Analysis

The trial court's order granting Ogbuehi's motion to strike noted the motion was granted "in accordance with CCP [section] 425.13."  The trial court explained:

> "As noted [in section 425.13,] a [punitive damages] claim may not be brought against a health care professional, unless on motion of the plaintiff the court finds there is a substantial probability that plaintiff will prevail on [the] claim [pursuant to] Civil Code section 3294.

> "The motion must be brought within 2 years of the filing of the complaint or 9 months before trial, whichever is earlier.  Plaintiff cites *Looney v. Superior Court* (1993) 16 Cal.App.4th 521, 531-536, asserting there is an 'exception' to the requirement to file the requisite motion under CCP § 425.13, to include his pending motion for trial setting preference under CCP § 36.  However, *Looney* appears instead to hold that where a motion for trial setting preference is granted and the trial date is advanced, the 9-month time limit for filing the motion may not necessarily apply in that case.  (1 Cal.App.5th 521, 535 ['We therefore imply an exception to section 425.13 which permits the granting of a motion brought less than nine months prior to the first assigned trial date where it is necessary to protect a plaintiff's right to a preferential trial date and the defendant receives or has had a reasonable opportunity to conduct discovery regarding the punitive damage[s] claim.'].)  The case does not stand for the proposition that the motion under section 425.13 for seeking punitive damages against a healthcare professional *is not required to be made* simply because a CCP § 36 motion [for trial setting preference] is pending."  (Italics added.)

We find no abuse of discretion in the trial court's order granting Ogbuehi's motion to strike Berry's punitive damages claim for lack of compliance with section 425.13.

To the extent Berry argues the trial court erred in failing to grant him leave to file an amended pleading upon making the necessary showing in a motion under section 425.13, that contention is unavailing.  Berry has not shown he sought leave to file the requisite motion under section 425.13.  In any event, *Ogbuehi defeated Berry's underlying medical malpractice claim at trial*.  Accordingly, Berry cannot show prejudice arising from any putative error by the trial court with respect to any potential punitive damages claim.

6.

**II.      Trial Court's Denial of Berry's Motion for Entry of Default Against Obguehi**

Berry contends the trial court abused its discretion in denying his motion for entry of default against Ogbuehi.  We disagree.

### *A.      Background*

Berry served Ogbuehi with the summons and complaint in this matter on January 11.  Ogbuehi did not appear in the case until May 7, when he filed the above-discussed motion to strike Berry's punitive damages claim.

On March 13, Berry filed a request for collective entry of default as to "Karim Rasheed, MD; Clement Ogbuehi, P.A., et al.," and for entry of a $350,000 clerk's judgment in his favor.  The trial court clerk denied Berry's request for default, stating: "Default NOT entered as requested" because "[d]efault may not be request[ed] against 'et al.,' [and] defendant Rasheed [has] filed a Response."

Thereafter, on July 3, Berry filed "a motion for entry of default … and to enter judgment on the pleadings of $350,000" (motion for entry of default) against Ogbuehi. (Capitalization omitted.)  On July 9, the trial court denied the motion in a written order. In its written order, the court stated:

> "In reviewing the record before the court, it appears the March 13, 2024 request for entry of default was properly denied by the clerk based on [Berry] requesting that default be entered against 'Karim Rasheed, M.D.; Clement Ogbuehi, PA, et al.'  As correctly stated by the clerk in rejecting the request for entry of default, default may not be entered against 'et al.' and Defendant Rasheed had filed a responsive pleading on February 29, 2024.  As such, default could not be entered 'as requested' and the clerk properly denied the request for entry of default.  [Berry's] argument that the clerk's communication 'misled' him to believe that he could not submit another request for entry of default against Defendant Ogbuehi individually is unavailing.  The clerk did not make any representations regarding Defendant Ogbuehi, including whether he was represented by the same counsel as Defendant Rasheed, but merely explained the reasons for declining to enter default based on the manner in which [Berry] had requested it.

"In addition to the request for default having been properly denied by the clerk, it is now improper to enter default against Defendant Ogbuehi where, as [Berry] identifies, Defendant Ogbuehi filed a responsive pleading by way of his Motion to Strike filed May 7, 2024. (Code Civ. Proc. § 1014.) (The court also notes that Defendant Ogbuehi has since filed an Answer on July 5, 2024.) Accordingly, [Berry's motion for entry of default] is hereby DENIED."

On August 5, Berry moved to strike Ogbuehi's answer, among other things. Berry's motion to strike Ogbuehi's answer was heard and denied by the court on September 5, on grounds Ogbuehi was not properly served with a copy of the motion.[5]

In addition, Berry moved for reconsideration of the trial court's July 9 order denying his motion for entry of default against Ogbuehi (motion for reconsideration). The court heard and denied, on September 5, Berry's motion for reconsideration of its July 9 order.

In denying Berry's motion for reconsideration, the trial court acknowledged that the summons and complaint were served on Ogbuehi on January 11, but Ogbuehi did not file a responsive pleading—namely, his motion to strike Berry's punitive damages claim—until May 7. The court indicated that Ogbuehi's responsive pleading—that is, his motion to strike Berry's punitive damages claim—was not timely under section 585, subdivision (f). However, the court further explained:

"[The court clerk] properly rejected [Berry's] request for entry of default based on the manner in which [Berry] had requested it (i.e., by requesting entry of default against both defendants, even though Defendant Rasheed had filed a responsive pleading and by including 'et al.' in the request). Furthermore, [Berry] did not renew his request for entry of default [i.e., by filing a motion for entry of default] until after Defendant Ogbuehi had filed his Motion to Strike [Punitive Damages Claim], which appears to have had the effect of extending his time to answer. (Code Civ.

---

[5] The trial court also noted that Ogbuehi's answer was timely filed because it was filed within 30 days after the court's June 10 ruling granting his motion to strike Berry's punitive damages claim. Specifically, the court stated: "[I]t appears that [the] defendant filed an answer within the 30 day deadline[] and [Berry] provided no authority for striking an Answer timely filed after a duly noticed motion to strike."

8.

Proc. § 435, subd. (c) ['If a party serves and files a notice of motion to strike without demurring to the complaint, the time to answer is extended and no default may be entered against that defendant except as provided in [Code Civ. Proc. §§] 585 and 586.'].)  Additionally, as Defendant Ogbuehi filed his Answer on July 3, 2024 (within 30 days after the court's June 10, 2024 ruling on [Ogbuehi's motion to strike Berry's punitive damages claim]), his Answer was timely filed, and default may not now be entered against him.  (Code Civ. Proc. § 585, subd. (b).)"

### B.      Analysis

To reiterate, on March 13, Berry filed a request for entry of default as to "Karim Rasheed, MD; Clement Ogbuehi, P.A., et al."  After that request was denied by the trial court clerk, Berry filed a motion for entry of default, which, in turn, was denied by the trial court.  Berry challenges the court's ruling.

As described above, the trial court's denial of Berry's motion for entry of default was centered on the trial court clerk's stated rationale for denying Berry's request for entry of default.  In denying Berry's request for collective entry of default, the trial court clerk noted:  "Default NOT entered as requested" because "[d]efault may not be request[ed] against 'et al,' [and] defendant Rasheed [has] filed a Response."  Berry did not follow up by filing a corrected application requesting the trial court clerk to enter default solely as to Ogbuehi.

Eventually, on May 7, Ogbuehi appeared in the matter by filing a motion to strike Berry's punitive damages claim, which motion was granted by the court on June 10.

Thereafter, on July 3, Berry filed the instant motion for entry of default.  The trial court, in denying Berry's motion for entry of default, specifically noted that "the March 13, 2024 request for entry of default was properly denied by the clerk based on [Berry] requesting that default be entered against 'Karim Rasheed, M.D.; Clement Ogbuehi, PA, et al."  In his briefing to this court, Berry *has not addressed* the court's stated basis for denying his motion for entry of default.  Berry has therefore forfeited any challenge to the court's ruling.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [orders and judgments are presumed correct, and the appellant must affirmatively show

9.

error]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)

The trial court, in denying Berry's motion for entry of default, further noted that, by the time Berry brought his motion for entry of default, Ogbuehi had appeared in the matter by filing a motion to strike Berry's punitive damages claim. (See § 1014 ["A defendant appears in an action when the defendant answers, demurs, [or] *files a notice of motion to strike*[.]" (Italics added.)].) Therefore, the court could properly decline to authorize entry of default against Ogbuehi at that juncture. (See *Goddard v. Pollock* (1974) 37 Cal.App.3d 137, 141 ["it is now well established by the case law that where a pleading is belatedly filed, but at a time when a default has not yet been taken, the plaintiff has, in effect, granted the defendant additional time within which to plead and he is not strictly in default"];[6] *Lorenz v. Commercial Acceptance Insurance Co.* (1995) 40 Cal.App.4th 981, 997-998 ["The policy of the law … does not favor default."]; *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1364 (*Elkins*) [recognizing the " ' "*strong policy favoring the disposition of cases on their merits*," ' " italics in original].)

In sum, Berry's argument that the trial court was required to grant his motion for entry of default because Ogbuehi's motion to strike punitive damages claim was untimely, is not persuasive. (See *A & B Metal Products v. MacArthur Properties* (1970)

---

[6] Section 585, subdivision (a) states that if no answer or other responsive pleading "has been filed with the clerk, … within the time specified in the summons, *or within further time as may be allowed*, the clerk, upon written application of the plaintiff, … shall enter the default of the defendant[.]" (Italics added.) When a responsive pleading is filed before a plaintiff's application for default, courts have applied the italicized language to the facts and concluded that the plaintiff, in effect, has *allowed* the defendant *further time*. (See *Fiorentino v. City of Fresno* (2007) 150 Cal.App.4th 596, 605 fn. 3 [where the plaintiff has not yet applied for entry of default, plaintiff in effect, has *allowed* the defendant *further time* to plead].)

11 Cal.App.3d 642, 647 ["an untimely pleading is not a nullity, and it will serve to preclude the taking of default proceedings unless it is stricken"]; accord *Cuddahy v. Gragg* (1920) 46 Cal.App. 578, 580.)[7]

Berry's additional argument that the trial court further erred in denying his motion to strike Ogbuehi's subsequently filed answer is also unavailing, because, as noted, the court denied that motion as it was not properly served on Ogbuehi. The trial court also reasoned that Ogbuehi's answer was timely filed because it was filed within 30 days after the court's June 10 ruling granting his motion to strike Berry's punitive damages claim. (See § 435, subd. (c); § 473, subd. (a)(1) ["The court may, in furtherance of justice, and on any terms as may be proper … enlarge the time for answer or demurrer."]; *Jackson v. Doe* (2011) 192 Cal.App.4th 742, 749 ["[T]he trial court had discretion to consider [the] defendant's untimely [filing]."].)

## III. Trial Court's Denial of Berry's Request for Appointment of a Medical Expert

Berry next challenges the trial court's denial of his motion for appointment of a medical expert. On the record before us, Berry has not shown the trial court erred.

### A. *Background*

On May 6, Berry filed a motion for appointment of a medical expert. Berry sought the appointment of a medical expert given his claims for medical malpractice and the fact that Dr. Rasheed planned to file a motion for summary judgment supported by a declaration from a medical expert. On June 11, the trial court denied Berry's motion for appointment of a medical expert. Since Berry filed his motion for appointment of a medical expert at least in part in the context of Dr. Rasheed's motion for summary judgment, our analysis of this issue necessarily refers to the proceedings on Dr. Rasheed's motion for summary judgment.

---

[7] Notably, Berry has not shown he filed a motion to strike Ogbuehi's motion to strike punitive damages claim, nor that the trial court struck the latter.

**B.      *Analysis*[8]**

"Generally, 'negligence' is the failure to exercise the care a reasonable person would exercise under the circumstances.  [Citation.]  Medical negligence is one type of negligence, to which general negligence principles apply." (*Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690, 694.)  "The elements of a medical malpractice claim are ' " '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' " ' " (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468, fn. 2 (*Avivi*).)

"Both the standard of care and [a defendant's] breach must normally be established by expert testimony in a medical malpractice case." (*Avivi*, *supra*, 159 Cal.App.4th at p. 467.)  In addition, " '[c]ausation must be proven within a reasonable medical probability based upon competent expert testimony.' " (*Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603; see also *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 153 (*Sanchez*) [" 'Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff.' "].)

Given his medical malpractice claims, Berry moved for appointment of an expert to address the "critical issue of causation."  Berry's motion further noted:  "The issue of causation is beyond common knowledge [of] any layperson."  Under Evidence Code

_____

[8] Berry raised this same issue in his prior appeal following the trial court's granting of Dr. Rasheed's summary judgment motion.  Our analysis here mirrors our resolution of this issue in the opinion issued in the prior case. (*Berry v. Rasheed*, *et al.*, Case No. F088719.)

section 730, the trial court has the discretion to appoint an expert for indigent prisoner litigants. "[T]he discretionary appointment of an expert pursuant to Evidence Code section 730 is among the measures available to trial courts to ensure indigent prisoner litigants are afforded meaningful access to the courts." (*Smith*, *supra*, 38 Cal.App.5th at p. 459.)

As mentioned, on June 11, the trial court denied Berry's motion for appointment of a medical expert. The court's written order denying Berry's motion stated in part:

> "With respect to the motion for appointment of expert witnesses, the motion is also denied, without prejudice. The statutory authority empowering a court to appoint an expert is completely discretionary. (Evid. Code § 730; *Hulbert v. Cross* (2021) 65 Cal.App.5th 405, 416-17.) As an initial matter, Plaintiff presents no authority for the appointment of an expert to help an indigent person pursue a medical malpractice case, and no funds are available to this court from which to pay an expert to assist Plaintiff in the prosecution of his case.

> "Moreover, while Plaintiff lists three individuals in Fresno and Kings County that 'could be appointed to evaluate' his case, Plaintiff has not presented any information in his motion that would allow the court to assess whether any of these experts would be appropriately appointed in this case. Specifically, Plaintiff does not provide for any of these experts an hourly rate, a curriculum vitae, or a declaration to show the qualifications or intended testimony of the experts in Plaintiff's case to enable the court to determine whether appointment of a particular expert is appropriate or warranted to support Plaintiff's claims. Accordingly, Plaintiff's motion for appointment of a medical expert is also denied without prejudice."

In the meantime, on May 10, Dr. Rasheed had filed a motion for summary judgment on grounds, inter alia, that he did not breach the standard of care in his treatment of Berry. Dr. Rasheed's motion was supported by a declaration from Dr. Daniel Beers, an ophthalmologist. Dr. Beers reviewed the records of Dr. Rasheed's treatment of Berry and opined that Dr. Rasheed had acted within the standard of care. Dr. Beers acknowledged that Berry developed a post-surgery eye infection but opined

"there was nothing about the care and treatment provided by Dr. Rasheed at any time that in any way fell below the standard of care."

The trial court heard Dr. Rasheed's summary judgment motion on August 19. The court noted that "Plaintiff is required to present [an expert] declaration where a defendant, as here, presents competent expert evidence that the Defendant's treatment met the standard of care." The court therefore, on its own motion, continued the hearing to September 5, "to allow Plaintiff an opportunity to renew his request for appointment of a medical expert[.]" In making this ruling, the court stated: "The court reiterates that the continuance of the hearing on the motion for summary judgment is to allow Plaintiff an opportunity to review his request for appointment of a medical expert, but the court does not prematurely opine as to the merits of a renewed motion that does not set forth the criteria outlined in the court's order … which would be necessary for the court to appoint such an expert."

At the next hearing on Dr. Rasheed's motion for summary judgment on September 5, Berry did not renew his motion for appointment of a medical expert, and the court granted Dr. Rasheed's motion for summary judgment. In doing so, the court observed: "[T]he court again notes its additional bases for initially declining to appoint an expert witness for Plaintiff, *to wit*: that Plaintiff failed and has still failed to present any information in his motion [to appoint an expert witness] that would allow the [c]ourt to assess whether any of his named experts would appropriately be appointed in this case, their hourly rate, a curriculum vitae, or a declaration to show their qualifications or intended testimony." (Italics added.) The court further stated: "[N]one of those things have been done … Instead, what I hear from Mr. Berry is he has a specialist out there, but he hasn't gotten a declaration to put before the Court despite the continuance." The court noted that had Berry supplied the needed information or declaration and an expert potentially been appointed, the court could have considered delaying ruling on Dr. Rasheed's summary judgment motion.

Berry's briefs do not persuasively address the court's above-noted reasons for denying his motion to appoint a medical expert. Accordingly, we conclude that Berry has not shown that the trial court's denial of his motion to appoint a medical expert under the circumstances reflected in the record, was an abuse of discretion.

## IV. Trial Court's Denial of Berry's Request, During Trial, For a Body Attachment Bench Warrant for Dr. Rasheed

Finally, Berry argues the trial court erred in denying his request, during trial, for a body attachment bench warrant to compel Dr. Rasheed to testify in an expert capacity/provide opinion testimony in Berry's case against Obguehi. We conclude Berry has forfeited his arguments. In any event, even were we to consider Berry's arguments as presented, they lack merit.

### A. Berry Has Forfeited his Arguments

As noted, Berry contends the trial court erred in denying his request for a body attachment bench warrant to compel Dr. Rasheed to testify in an expert capacity/provide opinion testimony in Berry's case against Obguehi. However, Berry's arguments are not supported by *requisite citations to the record*. Accordingly, Berry has forfeited his arguments. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156 [" ' "[i]f a party fails to support an argument with the necessary citations to the record, ... the argument [will be] deemed to have been waived" ' "]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 ["If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."]; Cal. Rules of Court, rule 8.204(a).)

In any event, Berry's contentions, taken as presented, lack merit. Berry contends that he subpoenaed Dr. Rasheed to appear as a witness at trial. Berry notes that Dr. Rasheed's testimony was necessary to shed light on issues related to the " '[s]tandard of care' " and "the essential element of causation." Berry states that Dr. Rasheed "was

15.

subpoenaed and given the ordinary witness fees due to him" to testify as Berry's treating physician, but Dr. Rasheed requested an expert fee of "$20,000.00 to testify at trial." Berry adds that "the trial court denied [Berry's] request to issue a body attachment to bring Dr. Rasheed to trial as he was paid the normal witness fees." Berry states the court incorrectly ruled, pursuant to Government Code section 68092.5, that "Dr. Rasheed [was] entitled to expert fees of $20,000.00 before attaching a warrant to get him to trial." Berry asserts the court abused its discretion.

Ogbuehi, for his part, also does *not* delineate the background relevant to resolution of this issue. Nonetheless, Ogbuehi responds that "the court properly denied [Berry's] request for a body attachment bench warrant [for] Dr. Rasheed during trial." (Capitalization omitted.)

Ogbuehi argues that, under Government Code section 68092.5, subdivision (a)(1), both an expert witness and a treating provider " 'who is asked to express an opinion' at trial" is entitled to his " 'reasonable and customary hourly rate' " for the duration of his testimony. Ogbuehi adds that, under Government Code section 68092.5, subdivision (b), this fee must be tendered "with the subpoena or prior to the expert's testimony" and "[f]ailure to tender the fee with the subpoena renders the subpoena ineffective to compel the physician's attendance at trial unless the parties stipulate otherwise."

Ogbuehi contends that Dr. Rasheed requested $20,000 for his trial testimony; Berry did not furnish the fee to Dr. Rasheed prior to the requested testimony; the parties did not reach a stipulation regarding Dr. Rasheed's appearance at trial; and therefore, the subpoena served on Dr. Rasheed was not effective to compel his testimony. Ogbuehi adds: "To the extent that [Berry] disagreed with Dr. Rasheed's fee, he was required to file a motion with the trial court. (Gov. Code, § 68092.5[,] subd. (c).) Rather than file the required motion, Berry proceeded with a request for a body attachment. [Citation.] Such is not the appropriate procedure when a party disagrees with an expert's fee. On that basis, the trial court properly denied [Berry's] request."

16.

Berry posits the trial court erred under *Evers v. Cornelson* (1984) 163 Cal.App.3d 310 (*Evers*). He points out that *Evers* clarified that Government Code section 68092.5 requires the payment of expert witness fees to a witness only when the witness testifies *solely* as an expert. (See *Evers* at pp. 315-316.) Berry provides the following quote from *Evers*: " 'A physician who has rendered medical services to the patient by way of examination or treatment is subject to the power of subpoena and entitled only to ordinary witness fees.' " (See *Evers* at p. 316)

Ogbuehi counters: "Berry improperly relies upon [*Evers*] in an attempt to avoid the plain language of the statute. However, Government Code [section] 68092.5, subdivision (a)(1) was amended after the decision in *Evers* to specifically cover treating physicians. As such, *Evers* is inapplicable." Ogbuehi is correct; Government Code section 68092.5 was amended as described, by Stats. 1988, c. 275, § 1 (1987-1988 Leg. Session). (See Cal. Subpoena Handbook, § 5:5.)

Here, Berry contends Dr. Rasheed would have opined on issues related to the standard of care and to causation, among other things. For Dr. Rasheed to provide such opinions, he would have been entitled, under Government Code section 68092.5, at a minimum to his customary hourly fee for the duration of his testimony. But Dr. Rasheed was, instead, provided with the statutory witness fee, rendering ineffective the subpoena served on him, for the above-described purpose. Under these circumstances, Berry has not shown the trial court erred in denying his request for a body attachment bench warrant for Dr. Rasheed. Further, as noted above, Berry has not provided record citations supporting his arguments and, consequently, this court cannot ascertain all the facts relevant to his arguments.

**<u>DISPOSITION</u>**

The judgment is affirmed.[9]  Each party shall bear its own costs on appeal.


SNAUFFER, J.

WE CONCUR:


HILL, P. J.


LEVY, J.

---

[9] Berry's request for sanctions against the Clerk of the Kings County Superior Court is denied.